**In re Clyde W. MARKER, Debtor.**

**Clyde W. MARKER, Plaintiff,**

**v.**

**Ann M. MARKER, Defendant.**

**Ann M. MARKER, Plaintiff,**

**v.**

**Clyde W. MARKER, Defendant.**

**Bankruptcy No. 91–1683–BM.**

**Adv. Nos. 91–0333–BM, 91–0522–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 17, 1992.

---

M. Farley Schlass, Bethel Park, Pa., John M. Silvestri, Pittsburgh, Pa., for Ann M. Marker.

Mark L. Glosser, Stone, Glosser and Stone, Pittsburgh, Pa., for debtor.

Alan E. Cech, Flaherty & Sheehy, Pittsburgh, Pa., trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Several matters are before the court at this time. Ann M. Marker (hereinafter "Marker") seeks in Adversary No. 91–0522–BM to have Clyde W. Marker (hereinafter "debtor") denied a general discharge pursuant to 11 U.S.C. § 727(a) on grounds that he concealed and under-valued some of his assets. In the alternative, Marker seeks to have debts of $140,000 and $30,000 owed to her by debtor declared nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and (6). According to Marker, the debts are nondischargeable because they are in the nature of alimony, support, or maintenance. She also maintains that a portion of the debt of $30,000 is nondischargeable because it was awarded as damages for willful and malicious injury by debtor.

Debtor seeks a determination in Adversary 91–0333–BM that these same debts are *not* in the nature of alimony, support, or maintenance and therefore are dischargeable. Marker has filed what she titles a "counterclaim" in this adversary action wherein she seeks a determination that all the assets listed in debtor's bankruptcy schedules are equitably owned by her and debtor and a determination that said assets are within the constructive custody of the court having jurisdiction over their divorce proceeding.

Marker's request that debtor be denied a general discharge shall be denied. However, for reasons set forth below, the two debts owed to her by debtor are determined to be *non*dischargeable.

-I-

### FACTS

Debtor and Marker were married in 1968. He is now 55 years old and she is 52 years old. They have a son now 20 years old who supports himself. Although Marker on rare occasions was employed in minimum wage jobs during their marriage, for the most part she was a homemaker whose primary responsibility was maintaining the home and raising her three children from a previous marriage and the child from her marriage to debtor.

Debtor and Marker were separated in May of 1986. Thereafter debtor commenced divorce proceedings against Marker in 1987 in the Court of Common Pleas of

Allegheny County, Pennsylvania (hereinafter "state court").

An order was issued in state court on November 3, 1988, awarding Marker alimony *pendente lite* and child support of $1,500 per month. The award was based in part on a finding that debtor had a monthly net income of $3,500 while Marker had a monthly earning capacity of only $300.

Debtor and Marker were granted a divorce in December of 1990. An order which disposed of claims for equitable distribution, alimony, and counsel fees was issued by the state court on March 20, 1991.

The marital assets were divided by the state court as follows. Debtor was awarded his pension plan, a boat and trailer, a life insurance policy, the parties' joint income tax refunds, and the parties' interest in a family-owned business known as Marker & Sons, Inc. Marker was awarded the marital residence and household goods, a savings account, and her jewelry and automobile.

Debtor was directed to execute a deed conveying the marital residence to Marker. In addition, debtor was ordered to pay Marker the sum of $140,000 by May 31, 1991 for her share of their interest in Marker & Sons, Inc. Debtor was also directed to satisfy a judgment by Equibank against the marital property, half of which payment was to be deducted from the $140,000 payment to Marker. Finally, the court directed that the parties' time-share property was to be sold and that the net sale proceeds were to be divided evenly between them.

The court explained that Marker was to receive a lump sum payment of $140,000 instead of installment payments due to the considerable risk that she otherwise would not be paid. Payment was to be made by May 31, 1991, because debtor was capable of procuring such a sum either from the family business or through a loan in which his interest in the business was pledged as collateral.

Marker was awarded approximately sixty percent (60%) of the marital property. In arriving at this outcome, the state court took into account the parties' ages, the length of their marriage, the contribution of both to the marriage, the vast discrepancy in their earnings, debtor's separate estate in the form of his entitlement to one-half of his deceased father's one-third interest in Marker & Sons, Inc., the needs of the parties, and their standard of living during the marriage.

As for alimony, Marker's alimony *pendente lite* and child support of $1,500 per month were terminated as of May 31, 1991. She instead was awarded permanent alimony of $800 per month, which was to commence on June 1, 1991, and was to terminate upon the death of either party or upon Marker's cohabitation or remarriage.

As for counsel fees, debtor was directed to pay $30,000 of the counsel fees incurred by Marker during the divorce proceeding. Of that amount, $10,000 was awarded because debtor's obdurate and vexatious conduct caused additional legal hours to be utilized. The remaining $20,000 was awarded to fulfill Marker's needs as she clearly required these services and debtor had the ability to pay for them.

On April 8, 1991, debtor filed a motion in the divorce proceeding for post-trial relief. Oral argument on the motion was scheduled for June 6, 1991.

On May 17, 1991, approximately three (3) weeks before oral argument was to be heard, debtor filed a voluntary chapter 7 petition. The original bankruptcy schedules listed assets valued at $52,155.00. Included were the following: the marital residence ($44,000); the time share property ($6,000); a boat and trailer ($2,000); and 226 shares (33%) of stock in Marker & Sons, Inc., which was valued at "NONE". Debtor also listed unsecured debt of $224,902.23.

Debtor amended his bankruptcy schedules on June 2, 1991 to include additional assets valued at $129,255.00. Included was debtor's interest in a pension plan ($14,000). Additionally, debtor listed the value of his interest in Marker & Sons, Inc. as $133,000, instead of "NONE".

## -II-

### DENIAL OF GENERAL DISCHARGE

A chapter 7 debtor shall be granted a discharge unless one of eight exceptions is present. Two of those exceptions are set forth at 11 U.S.C. § 727(a)(2) and (3), respectively:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under all of the circumstances of the case ...

■ Section 727 is the core of the "fresh start" provision, which permits the honest debtor to receive a new start in life "free of the manacles of debt". *Matter of Brooks*, 58 B.R. 462, 464 (Bankr.W.D.Pa. 1986). The primary thrust of the objections to discharge which are set forth at § 727(a) is to provide a means whereby abusive conduct by a debtor can be dealt with by denying them a discharge. *In re Rusnak*, 110 B.R. 771, 775 (Bankr.W.D.Pa. 1990).

■ Caution is required when dealing with the right to a discharge. As a consequence, § 727(a) must be strictly construed against the objector and in favor of the debtor. *In re Rusnak*, 110 B.R. at 776 (*citing In re Leichter*, 197 F.2d 955, 959 (3d Cir.1952), *cert. denied*, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705 (1953)). The burden of proving that debtor should be denied a discharge is upon the objector. *See* Bankruptcy Rule 4005.

Marker must establish the following in order for debtor to be denied a discharge pursuant to 11 U.S.C. § 727(a)(2):

(1) debtor transferred, removed, destroyed, mutilated, or concealed property;

(2) the property belonged to debtor;

(3) the transferral, removal, destruction, mutilation, or concealment occurred within one year of the filing of the petition; and

(4) debtor intended to hinder, delay, or defraud a creditor.

*See In re Tarle*, 87 B.R. 376, 378 (Bankr. W.D.Pa.1988).

Marker must establish the following in order for debtor to be denied a discharge pursuant to 11 U.S.C. § 727(a)(3):

(1) debtor failed to keep or preserve books or records; and

(2) such failure makes it impossible to ascertain debtor's financial condition and material business transactions.

*See Matter of Decker*, 595 F.2d 185, 187 (3d Cir.1979).

Marker points to a virtual myriad of reasons why debtor should be denied a general discharge. The allegations raised by Marker in this regard are too numerous for each one of them to be addressed. Only the most plausible allegations will be discussed. A reader may note that on some occasions only a conclusion is offered with little or no reasoning. This treatment is utilized because there was a paucity of credible proof. The remainder of the reasons are totally without merit and therefore will not be addressed.

### A.) *Income From Sale Of Scrap Metal*

■ Debtor failed to report in his bankruptcy schedules and other statements his interest in a scrap metal business and the income derived from the sale of scrap metal. Marker alleges that debtor sought to conceal this property interest and therefore should be denied a general discharge.

The insistence that debtor should be denied a discharge for this reason is unfounded. Marker failed to establish that debtor received such income within one year of the filing of his bankruptcy petition and has not established through credible evidence that debtor intended to hinder, delay, or defraud any creditor or the chapter 7 trustee by failing to report this income. Clearly debtor's schedules could have been more artfully drawn. However, these deficiencies equally clearly do not merit a denial of a discharge.

### B.) *C & R Partnership*

■ C & R is a partnership formed by debtor and his brother which owns and leases to Marker & Sons, Inc. a prefabricated metal building situated on property owned by Marker & Sons, Inc. Marker insists that debtor should be denied a discharge for failing to report his interest in the partnership and in the income derived therefrom.

The allegation that debtor sought to conceal his interest in C & R is at the very least without merit. While it is true that debtor did not list his interest in C & R on Schedule B–2, the statement of income submitted by debtor clearly identifies the asset and lists income derived from C & R. In addition, a tax return for the partnership was appended to the petition.

### C.) *General American Life Insurance Policy*

Marker further alleges that debtor should be denied a discharge because he failed to schedule his interest in the cash surrender value of a life insurance policy issued by General American Life Insurance Company.

It is not necessary to discuss this insurance policy in detail. The allegation that debtor failed to disclose any interest in it in the schedules is altogether groundless. Although debtor failed to disclose the life insurance policy in the original schedules,

any interest he has in it was disclosed in the amended schedules, which recited that it was listed for the sake of completeness and not because it was an asset of the estate. To the contrary, debtor averred and the documents substantiated that the policy in question was owned by his employer.

### D.) *Interest In Marker & Sons, Inc.*

■ Debtor stated in the amended schedules that he owns thirty-three percent (33%) of the stock in Marker & Sons, Inc. and declared that the value of his interest is $133,000.

Marker contends that debtor in truth owns fifty percent (50%) of the stock and that its value is well in excess of $133,000. According to Marker, debtor should be denied a discharge because he under-valued his interest in Marker & Sons, Inc. and because he under-reported the extent of his ownership in the business.

The insistence that debtor should be denied a discharge for these reasons is without merit. Marker has not shown by the evidence offered at hearing that debtor's interest is greater than thirty-three percent (33%)[1] or that the value of his interest is greater than $133,000. Moreover, there has been no showing that debtor intended to hinder, delay, or defraud any creditor or the trustee by claiming that he owned only 33% of the stock and that its value was only $133,000.

The remaining grounds offered for denying debtor a discharge have even less merit in fact or law. For that reason they will not be addressed.

### -III-

### DISCHARGEABILITY OF DEBTS

Marker seeks a determination in Adversary No. 91–0522–BM that the debt of $140,000 owed to her by debtor for her share of their interest in Marker & Sons, Inc. and that the debt of $30,000 owed to

---

**1.** The chapter 7 trustee has brought an action at Adversary 91–0480–BM against debtor and others in which he seeks a determination whether debtor own 33% or 50% of the stock of Marker & Sons, Inc.. The determination that *Marker* has not shown that debtor owns more than 33% has no effect on the *trustee's* action, which remains to be tried.

her by debtor for legal fees incurred by her in the divorce proceeding are not dischargeable pursuant to 11 U.S.C. § 523(a)(5) because they are in the nature of alimony, support, or maintenance. She further argues that a portion of the debt of $30,000 is not dischargeable pursuant to 11 U.S.C. § 523(a)(6) because it constituted damages for willful and malicious injury.

Debtor seeks a determination in Adversary No. 91–0333–BM that these debts are dischargeable for the reason that they are in the nature of a property settlement rather than in the nature of alimony, support, or maintenance.

11 U.S.C. § 523(a)(6) provides in part as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise ...; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Since Marker objects to the discharge of these particular debts, she has the burden of proving that they are not dischargeable. *See In re Gianakas*, 917 F.2d 759, 761 (3d.Cir.1990). This she must show by a preponderance of the evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991).

■ The determination as to whether a particular obligation is "in the nature of alimony, maintenance, or support" for bankruptcy purposes is a question of federal, not state, law. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6320; *also* S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. A debt may qualify as alimony, maintenance, or support, for purposes of § 523(a)(5), even if it does not legally qualify as such under state law. *See In re Yeates*, 807 F.2d 874, 878 (10th Cir.1986). The bankruptcy court must look beyond the label, if any, attached to a given obligation to ascertain its true nature. *See In re Gianakas*, 917 F.2d at 762.

■ Whether the obligations at issue here are in the nature of alimony, maintenance, or support, as opposed to being part of a property distribution, depends on the intent of the state court which issued the equitable distribution decree. *In re Gianakas*, 917 F.2d at 762.[2]

■ Three principal "indicators" must be examined in order to determine that intent.

The court must first examine the language and substance of the decree in the context of surrounding circumstances, using extrinsic evidence when necessary. *In re Gianakas*, 917 F.2d at 762. This threshold inquiry frequently will not yield conclusive results, however. The state court may not have indicated whether a given obligation is intended as support for the understandable reason that the possibility of a subsequent bankruptcy proceeding was not taken into account when the decree was issued. *In re Gianakas*, 917 F.2d at 763. Moreover, an obligation designated by the court as a property settlement nonetheless may be related to support for bankruptcy purposes. *See Buccino v. Buccino*, 397 Pa.Super. 241, 251–52, 580 A.2d 13, 18–19 (1990).

---

**2.** Although *Gianakas* involved a settlement agreement reached by the parties to the divorce proceeding, rather than a decree issued by the court having jurisdiction over the divorce proceeding, the analysis set forth in *Gianakas* applies with equal force to the latter type of situation. The only salient difference is that the intent to be ascertained is that of the state court rather than that of the parties to the divorce proceeding.

The second factor which must be considered in determining the true nature of a given obligation is the financial circumstances of the parties at the time the decree was issued. Whether one spouse had custody of minor children, was employed or not, or was employed in a less remunerative position than the other spouse may be highly salient considerations. *In re Gianakas*, 917 F.2d at 763 (*citing Shaver v. Shaver*, 736 F.2d 1314, 1317 (9th Cir.1984)).

The third factor is the function served by an obligation at the time of the decree. A debt which serves to maintain daily necessities such as food, clothing, and transportation in all likelihood is in the nature of support or maintenance. *In re Gianakas*, 917 F.2d at 763 (*citing In re Yeates*, 807 F.2d at 879)).

■ The Memorandum Opinion and accompanying Order issued by the state court does not conclusively indicate whether the $140,000 debt owed to Marker was intended to be in the nature of maintenance or support or was intended as a property settlement. Because it had no reason to take into account debtor's subsequent bankruptcy when it divided the marital estate, the state court did not find it necessary to indicate in a clear and unequivocal manner whether this obligation was intended as maintenance or support or as a property settlement. On the one hand, the court stated that said $140,000 was awarded to Marker "for her share of the parties' interest in the family business". On the other hand, when it explained the basis for awarding Marker approximately sixty percent (60%) of the "marital property", the court referred to the vast discrepancy in the parties' respective earning capacities and to their needs. Extrinsic evidence must be resorted to in determining the true nature of this particular obligation.

Things are different, however, for at least a portion of the $30,000 obligation to Marker for legal fees incurred by her during the divorce proceeding. As has been noted, debtor was ordered to pay Marker $10,000 in legal fees because of his "misconduct" and an additional $20,000 because debtor was able to pay them and Marker was unable to do so without additional permanent alimony. Debtor does not contest the award of $800 per month in permanent alimony for the obvious reason that it is in the nature of maintenance or support. The state court gave clear indication that the $20,000 obligation was in lieu of additional alimony. Had the state court not required debtor to pay this sum to Marker, it presumably would have increased her alimony.

A review of the financial circumstances of the parties strongly indicates that *both* obligations are in the nature of maintenance or support rather than a property settlement.

The disparity in the financial circumstances of the parties at the time of the decree was considerable. Marker was fifty-one years old at the time. Except for occasional part-time jobs that paid the minimum wage, Marker was a homemaker whose primary responsibility was maintaining the home and raising the children. Her earning capacity was severely limited by her lack of training and experience and by her age and education. The state court considered such factors and concluded that Marker had an earning capacity of only $800 per month. Debtor, by contrast, was found to have a monthly net income of $5,400.

The relative circumstances of the parties also suggest that the purpose of the $140,000 obligation was to enable Marker to obtain life's daily necessities. As has been noted, Marker was awarded the marital residence and its contents, a savings account, her jewelry and her automobile, and one-half of the net proceeds of the sale of the parties' time-share property.

The funds in the savings account had already been used by Marker during the divorce proceeding to support herself. Although Marker was also awarded $800 a month in permanent alimony, it would have been difficult (perhaps even impossible) for her to maintain herself without an additional award of money. It is unlikely that she would have been able for very long to maintain the marital residence, put food on the table, provide herself with transportation, and pay all her other bills, including

substantial legal fees incurred during the divorce proceeding. Before long she would have been unable to provide herself with the daily necessities. The purpose of $140,-000 debt to be paid by a date certain was to provide Marker with a financial cushion with which to maintain and support herself over the long haul. The order directing a lump sum payment rather than smaller installments was to insure compliance and deter the irascibility debtor had manifested during the protracted proceedings.

 In addition, the purpose of the $30,000 in legal fees awarded to Marker was to make it possible for her to provide herself with the necessities—i.e., legal services. In all, Marker incurred in excess of $40,000 in legal fees during the divorce proceedings. Had Marker not been awarded this amount, she would not have been able to pay her legal fees without depriving herself of a considerable part of her daily necessities.

The foregoing analysis indicates that *both* the $140,000 debt to Marker for her share of the parties' interest in Marker & Sons, Inc. *and* the $30,000 award for legal fees are in the nature of maintenance or support. Accordingly, they are *not* dischargeable pursuant to 11 U.S.C. § 523(a)(5).

-IV-

### COUNTERCLAIM

Marker seeks in her "counterclaim" a determination: (1) that she has an equitable interest in the marital assets by virtue of debtor's request in the divorce proceeding for equitable distribution of those assets; and (2) that debtor's assets remain in the custody of the state court—i.e., are *in custodia legis*—pending distribution of the marital assets in accordance with the decree of March 18, 1991.

It is far from clear what advantage or benefit Marker is seeking to obtain in this court ·by bringing this so-called "counterclaim". Marker has made no meaningful attempt to explain her counterclaim and has left it to this court to divine its meaning.

Although it has been denominated a "counterclaim", it appears to be more on the order of a *defense* to debtor's claim that the two obligations are dischargeable. The above "relief" appears to be significant only in the event these obligations are dischargeable. If they are not dischargeable, then the "counterclaim" has no effect.

In light of the determination that these two obligations are not dischargeable, it is not necessary to address the "counterclaim".

An appropriate Order shall be issued.

### ORDER OF COURT

AND NOW at Pittsburgh this 17th day of April, 1992, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED that the request by Ann M. Marker that Clyde W. Marker be denied a general discharge be and is DENIED.