In re Clyde D. STAHL, Jr., Debtor.

Kathy L. Stahl, Individually and on behalf of Dylan Stahl and Morgan Stahl, her minor children, Plaintiff,

v.

Clyde D. Stahl, Jr., Defendant.

Bankruptcy No. 00–20973–BM.
Adversary No. 00–2204–BM.

United States Bankruptcy Court, W.D. Pennsylvania.

March 5, 2001.

Timothy J. Sloan, Ebensberg, PA, for plaintiff.

James H. English, Altoona, PA, for debtor/defendant.

## *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff Kathy Stahl, former wife of debtor Clyde Stahl, seeks a determination that debtor's obligations to pay the mortgage on the their former marital residence and to pay the loan for plaintiff's Jeep Cherokee are excepted from discharge by §§ 523(a)(5) or (a)(15) of the Bankruptcy Code. She also seeks to have us quantify the dollar amount of the obligations.

Debtor denies that either of these Bankruptcy Code provisions excludes the obligations from discharge and insists that they therefore are dischargeable.

We conclude that the obligations are excluded from discharge by § 523(a)(5) because they were intended to provide maintenance and support for plaintiff and their minor children. We will not, however, make any determination as to the precise amount of these obligations but instead will defer to the state court to make this determination because we believe it is already familiar with the matter and is in a better position than are we to do so.

## —FACTS—

Debtor and plaintiff were married in 1980. Their marriage produced two children, one of whom was born in 1988 and the other in 1991.

Around the time they were married, debtor established and became proprietor of S & F Used Cars, which is in the business of reconditioning and selling Corvette automobiles to enthusiasts.

Plaintiff was episodically employed on a limited basis during their marriage. Although she worked for S & F Used Cars until late in 1994 as its bookkeeper, for which she received no salary, she primarily was a homemaker and raised the children after they were born.

Debtor and plaintiff were separated in December of 1994, after debtor moved out of the marital residence. Plaintiff remained in the residence with their minor children after the separation and still lives there with them. They lived "comfortably" at the time of the separation on an annual income of $80,000.00 to $90,000.00, most or all of which was derived from S & F Used Cars. Plaintiff became employed elsewhere as a bookkeeper in 1997. Her gross income was $13,566.00 in 1997 and had increased to $20,903.00 by 2000.

On December 3, 1997, the Court of Common Pleas of Bedford County, Pennsylvania, issued an order. Among other things, it directed debtor to make the monthly mortgage payments on the former marital residence and to make the monthly payments on plaintiff's 1994 Jeep Cherokee. Debtor did not appeal the order.

The state court issued a decree divorcing debtor and plaintiff on December 31, 1997.

Debtor complied with the order of December 3,1997, and made the required payments until he unilaterally stopped doing so in July or August of 1998. When the bank holding the mortgage against the marital residence notified plaintiff that it was going to foreclose against the property, plaintiff began making the mortgage and car payments on her own. Debtor has not made any of these payments since then.

The state court issued another order on July 29, 1999. Among other things, it

awarded the marital residence and the Jeep Cherokee to plaintiff and awarded debtor various other items of marital property. Paragraph 3 of the order reiterated that debtor was solely liable for paying the mortgage against the marital residence and the loan for the Jeep Cherokee. It directed him to pay all amounts due on the obligations within ninety days of the order and to hold plaintiff harmless for any and all liability she may have with respect the mortgage and the car loan. Paragraph 5 of the order found debtor to be in contempt of the December 3, 1997 order and directed that he be incarcerated for a period of six months if he did not comply within ninety days.

Debtor requested reconsideration of the order of July 29, 1999. After conducting a hearing on the matter, the state court denied debtor's motion on January 7, 2000. It also issued a memorandum opinion at the same time explaining its basis for, among other things, previously awarding the marital residence and Jeep Cherokee to plaintiff and requiring debtor to pay the obligations owed for them. For instance, the court stated as follows:

> Although defendant does have some work experience, she is certainly not going to be as financially stable as she was while she was married to … [debtor]. Moreover, should the … [debtor] reestablish his business after paying off the debts, his potential income is far greater than that which Ms. Stahl will ever enjoy. In addition to her present job, Ms. Stahl also retains primary custody of the two minor children. A common sense application of the statutes dictates that … [plaintiff herein] must receive a portion of the marital property and its proceeds which will allow her to maintain herself and her children in a manner at least minimally comparable to

that which they had during the marriage.

(pp. 14–15).

In explaining why it had refused to vacate paragraph 5 of its order of July 29, 1999, the court rejected debtor's contention that he should be relieved of the obligations imposed therein because he was unable to pay them due to a "downward turn" in his business affairs. The court noted that debtor had diverted money from the business to purchase a farm and to start a new business.

Debtor filed a voluntary chapter 7 petition on February 24, 2000. The schedules accompanying the petition identify plaintiff as having a disputed "possible dischargeable claim" in an "unknown amount".

On May 19, 2000, the state court issued another order requiring debtor to make monthly payments in a specified amount "for the separate support and maintenance of his two minor children" as well as specified amounts for child care and for arrearages.

On behalf of herself and the parties' minor children, plaintiff brought the present adversary action against debtor on May 26, 2000. She requests a determination that debtor's obligations to pay the mortgage against the family residence and the loan for her Jeep Cherokee, arising originally out of the order of December 3, 1997, are excepted from discharge by § 523(a)(5) or, alternatively, by § 523(a)(15) of the Bankruptcy Code. In addition, she requests a determination as to the exact dollar amount debtor owes on these obligations.

Trial of the adversary action was conducted on January 26, 2001, at which time both parties were given an opportunity to offer evidence on the issues presented.

## —DISCUSSION—

Section 523 of the Bankruptcy Code provides in part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—....

(5) to a spouse, former spouse, or child of the debtor for ... maintenance for, or support of such spouse or child, in connection with ... a property settlement agreement, divorce decree or other order of a court of record ...;....

(15) not of the kind described in paragraph 5 that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of court of a court of record ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ...; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor....

11 U.S.C. § 523.

Plaintiff asserts that debtor's obligations to pay the mortgage against the marital residence and to pay the loan for the Jeep Cherokee are excepted from discharge by § 523(a)(5) or, alternatively, by § 523(a)(15).[1] Debtor denies that the obligations are excepted from discharge by either provision.

Because she objects to the discharge of these obligations, plaintiff has the burden of proving that they fall under one of these exceptions. *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 761 (3d Cir.1990). She must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991).

Determining whether an obligation is in the nature of alimony, maintenance or support for purposes of § 523(a)(5) is a matter of federal law, not state law. It may so qualify under federal law but not under state law. We must "look beyond the label" to ascertain its "true nature". *Gianakas*, 917 F.2d at 762.

Determining whether an obligation is in the nature of alimony, maintenance or support instead of equitable distribution of marital property depends on the intent of the parties when the obligation arose. *Id.* If, as in the present case, the controlling instrument is a court order rather than an agreement between the parties, we must ascertain the intent of the court that issued the order. *Pollock v. Pollock (In re Pollock)*, 150 B.R. 584, 588 (Bankr.M.D.Pa. 1992); *Marker v. Marker (In re Marker)*, 139 B.R. 615, 621 n. 2 (Bankr.W.D.Pa. 1992); *Rooker v. Rooker (In re Rooker)*, 116 B.R. 415, 417 (Bankr.M.D.Pa.1990).

We should consider three "factors" when attempting to determine this intent.

First we should examine the language and substance of the relevant agreement or decree in the context of surrounding circumstances, utilizing extrinsic evidence when necessary. *Gianakas*, 917 F.2d at 762. This threshold inquiry often will not, however, yield conclusive results for the simple reason that the parties (or the

---

1. There is no dispute concerning debtor's obligation arising out of the order of May 19, 2000, to pay child support. Debtor concedes that this obligation is excepted from discharge by § 523(a)(5).

court) may not have thought it necessary to indicate what was intended in this regard.

The second "indicator" is the respective financial situations of the parties at the time of the agreement or decree. Whether one spouse had custody of minor children, was unemployed, or was employed in a job that paid considerably less than the other spouse made may be relevant considerations. *Gianakas*, 917 F.2d at 763.

The third "indicator" is the function the obligation served at the time of the agreement or decree. For example, an obligation that served to provide life's necessities such as food, shelter, clothing or transportation most likely is in the nature of maintenance or support. *Id.*

Exceptions to discharge generally are strictly construed in favor of the debtor and against the objector. This policy is somewhat tempered, however, if the obligation in question arose in the context of a separation or divorce. When it enacted § 523(a)(5), Congress decided to protect former spouses and dependent children in matters involving alimony, maintenance or support. Because of this, the exception to discharge found at § 523(a)(5) is construed less strictly in favor of the debtor than are other exceptions found at § 523(a). *Matter of Crosswhite*, 148 F.3d 879, 881–82 (7th Cir.1998).

Our review of the above orders of the state court, especially the memorandum opinion order of January 7, 2000, wherein the court explained its decision to award the marital residence and Jeep Cherokee to plaintiff and to require debtor to pay the obligations pertaining to them, leads us to conclude that the obligations are in the nature of maintenance or support of plaintiff and their minor children.

According to the state court, because of disparities in their income-earning poten-

tial, "common sense" dictated that plaintiff be awarded the marital residence and Jeep Cherokee so that she and their children could live in a manner that was "minimally comparable to that which they had during the marriage". The court awarded her the marital residence and the Jeep Cherokee, in other words, with the intent of enabling plaintiff and their minor children to maintain the standard of living they enjoyed at the time of the separation.

Although the state court did not expressly so state, we conclude that debtors obligations to pay the mortgage against the marital residence and to pay the loan for the Jeep Cherokee also were intended by the court to help maintain their standard of living. Given the disparity in the income-earning potentials of plaintiff and debtor, to which the court referred in explaining why it had awarded the marital residence and Jeep Cherokee to plaintiff, it is but a small inferential step to conclude that these obligations also were intended to serve the same function. The court's intention to maintain their standard of living otherwise would have been thwarted by plaintiff's obvious inability to pay the mortgage and the car loan on her own.

Even if we disregard what we consider to be the state court's obvious intention in imposing these obligations upon debtor and independently apply the *Gianakas* "indicators" to the circumstances of the parties when the obligations first were imposed, we still conclude that they were intended to enable plaintiff and their minor children to maintain the standard of living they enjoyed during the marriage.

We previously noted that plaintiff and their two minor children lived "comfortably" prior to when the parties first separated in December of 1994. Their annual income was between $80,000.00 and $90,000.00. Most, if not all, of this income came from debtor's operation of S & F

Used Cars. Little or none of it came from any earnings plaintiff may have had at the time. Although plaintiff did work as a bookkeeper at S & F Used Cars, she did not receive any salary for her services. Because her primary focus was on raising the children, plaintiff had no realistic prospect at the time of finding employment elsewhere that would have enabled her to maintain her and the childrens' standard of living.

The "function" of debtor's obligations unquestionably was to enable plaintiff to continue providing herself and the children with necessary shelter and transportation. Had debtor not been obligated to pay the mortgage and the car loan, awarding the family residence and the Jeep Cherokee to plaintiff would have been for nought because of plaintiff's lack of income and relatively insubstantial income-earning potential at the time.

We conclude from the foregoing that debtor's obligations to pay the mortgage against the marital residence and to pay the loan for plaintiff's Jeep Cherokee are excepted from discharge by § 523(a)(5) of the Bankruptcy Code. We need not in light of this determination address plaintiff's alternative assertion that they are excepted from discharge by § 523(a)(15).

■■■■ One final matter remains to be addressed. Plaintiff also has asked us to determine the dollars amounts of these obligations. We will decline to do so. The state court that issued the above orders is intimately familiar with such matters and, we believe, is in a better position to make such a determination. We know of nothing that would prevent the state court from making that determination and taking measures to enable plaintiff to collect the amount owed. The filing of a bankruptcy petition does not stay an action to collect maintenance or support from property that is not part of the bankruptcy estate. 11 U.S.C. § 362(b)(2)(B). Income earned after the filing of a chapter 7 bankruptcy petition, for instance, normally is not part of the bankruptcy estate. *Clark v. First City Bank,* 891 F.2d 111, 115 (5th Cir.1989); *Matter of Hellums,* 772 F.2d 379, 381 (7th Cir.1985).

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** this **5th** day of **March,** 2001, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that debtor's obligations to pay the mortgage against the former marital residence and to pay the loan for plaintiff's Jeep Cherokee, first arising out the order of the Court of Common Pleas of Bedford County, Pennsylvania, issued on December 3, 1997, are **EXCEPTED FROM DISCHARGE.**

It is **SO ORDERED.**