**In re Vincent A. MENDEZ, Debtor.**

**Teresa C. Mendez, Plaintiff,**

**v.**

**Vincent A. Mendez, Defendant.**

**Bankruptcy No. 00–21840.**
**Adversary No. 00–2260–BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 5, 2001.

**484**

Walter K. Swartzkopf, Esq., Foreman & Swartzkopf, Altoona, PA, for Plaintiff.

James R. Walsh, Esq., Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for Defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Debtor's former wife seeks a determination that certain obligations imposed upon debtor during the course of their divorce proceeding are excepted from discharge by § 523(a)(5) or § 523(a)(15) of the Bankruptcy Code.

Debtor concedes that his obligations to pay alimony and child support to his former wife are excepted from discharge by § 523(a)(5) but insists that the remaining obligations are dischargeable.

We conclude, for reasons set forth below, that *all* of the obligations in question are excepted from discharge by § 523(a)(5).

### — FACTS —

Plaintiff and debtor were married in 1976. Three children were born as a result of their marriage in 1977, 1982 and 1988, respectively.

Plaintiff is a physician specializing in internal medicine who established his own medical practice in 1988.

Plaintiff has a high-school education. Prior to November of 1994 she worked on a part-time basis in debtor's medical office but primarily devoted herself to raising their minor children.

Debtor and plaintiff purchased land in Bedford, Pennsylvania, in 1992 and erected a building upon it in which debtor has his medical office. The property is subject to two mortgages totaling approximately $88,000.00 for which they are jointly liable and is subject to various tax liens totaling approximately $34,5000.00.

Debtor and plaintiff separated in November of 1994. The following year plain-

tiff initiated a divorce proceeding against debtor in the Court of Common Pleas of Bedford County, Pennsylvania.

Debtor sold his medical practice to Connemaugh Health Initiatives ("CHI") late in 1995 or early in 1996 and became an employee of CHI. Among other things, debtor received $30,000.00 for a restrictive covenant and $18,650.00 for his medical practice accounts receivable. He also leased the office building and medical equipment therein to CHI on a month-to-month basis for $2,500.00 per month.

Debtor and plaintiff sold their marital residence at some undisclosed time after their separation. The net sale proceeds, which the parties split evenly, amounted to approximately $38,800.00. Plaintiff removed furniture from the house worth approximately $18,500.00 and kept it for herself.

After the marital residence was sold, plaintiff purchased a townhouse for $99,000.00 in which she and the parties' minor children, of whom she had custody, reside. Using her share of the net proceeds realized from the sale of the marital residence and other funds, plaintiff made a down payment of $30,000.00 and financed the balance of the purchase price through a mortgage against the property.

With his share of the net proceeds realized from the sale of the marital residence along with the funds he received from the sale of his medical practice to CHI, debtor built a new house in which he and his paramour and their child, who was born in 1998, reside. He also borrowed $200,000.00 from a bank to complete the house and granted it a mortgage against the property.

The Court of Common Pleas of Bedford County ordered debtor in December of 1997 to pay plaintiff the sum of $1,533.00 per month for her support and the sum of $1,588.50 per month in child support.

In addition to caring for their minor children, plaintiff began working in May of 1997 as a customer service representative for Automated Health Systems. According to plaintiff's 1998 federal income tax return, her gross income in 1998 was $35,039.00. Of this amount, only $17,343.00 was derived from her employment. The remainder came from payments debtor made to plaintiff for her support.

By contrast, debtor's gross income in 1998, all of which came from his employment by CHI, totaled $130,000.00.

On November 5, 1998, after conducting evidentiary hearings on plaintiff's request for alimony, counsel fees, and distribution of marital property, the Court of Common Pleas of Bedford County issued a memorandum opinion and order.

In the portion of its memorandum opinion captioned "DIVISION OF MARITAL PROPERTY", the court determined that the parties' marital assets had a total value of $381,517.51. Included in this total were, among other things, the medical office building ($235,000.00), the net proceeds from the sale of the marital residence ($38,804.36), the proceeds realized from the sale of debtor's medical practice to CHI ($48,658.79), and the home furnishings taken from the marital residence by debtor ($18,554.96).

Marital liabilities, the court determined, totaled $124,364.17. Included among these liabilities were, among other things, two mortgages against the medical office building ($98,034.50), a student loan ($9,761.67), credit card debt ($2,550.00), and taxes owed for 1996 and 1997 ($12,000.00).

The net value of the marital assets—i.e., the difference between the total value of the marital assets and marital liabilities—

was $257,171.34 ($381,517.51—$124,364.17 = $257,171.34).

The court determined that plaintiff should receive seventy-five percent of this net amount—i.e., $192,878.50—and that debtor should receive the remaining twenty-five percent—i.e., $64,292.84.

After subtracting from the amount awarded to plaintiff the amount she already had received as her share of the net proceeds from the sale of the marital residence ($19,402.18) and the value of the home furnishings plaintiff previously had removed from the marital residence ($18,554.36), the court concluded that plaintiff should receive $154,921.96 and directed debtor to pay this amount to plaintiff within ninety days. In addition, the court determined that debtor should pay all of the marital liabilities ($124,346.17). With respect to the "division of marital property", debtor's obligation to plaintiff totaled $279,268.13 ($154,921.96 + $124,346.17 = $271,268.13).

Except for plaintiff's one-half share of the net proceeds realized from the sale of the marital residence ($19,402.18) and the furnishings she had taken from the marital residence ($18,554.36), the court awarded the remainder of the marital assets ($343,560.97) to debtor.

Subtracting from this last amount the total amount of debtor's obligations to plaintiff with respect to the division of marital property, the court concluded that it would award debtor $64,292.84 ($343,560.97—$279,268.13 = $64,292.84).

In explaining how it had arrived at this 75%–25% division of marital assets, the court noted that whereas debtor would be able to continue practicing medicine, plaintiff's employment skills were limited by her high-school education. Although she was employed, plaintiff's income was far less than debtor's and her ability for future accumulation of capital was limited. The court also noted that plaintiff and debtor had achieved a relatively high standard of living at the time of their separation and found it questionable that plaintiff would ever be able to maintain that standard whereas debtor most likely would be able to do so.

In the portion of its memorandum opinion captioned "ALIMONY, COSTS AND COUNSEL FEES", the court awarded plaintiff alimony in the amount of $1,500.00 per month for a period of ten years and required debtor to pay plaintiff's counsel fees. The reasons given in support of such an award echoed those given for the above division of marital property. The court noted that debtor's income at that time, as well as his income-earning capacity, clearly exceeded plaintiff's. It also noted that debtor and plaintiff had attained a standard of living during their marriage that plaintiff would not be able to maintain on her own annual salary. Although she was employed, the court noted that plaintiff's salary was not adequate to meet her needs.

In the order accompanying its memorandum opinion, the court awarded plaintiff one-half of the net proceeds realized from the sale of the marital residence and all marital property then in her possession. The remainder of the marital property was awarded to debtor. The court also directed debtor to pay plaintiff the sum of $154,921.96 within ninety days and made him solely liable for all marital debts. A lien in favor of plaintiff was placed upon the marital property awarded to debtor to secure payment of the amount he was directed to pay plaintiff. Finally, the court directed debtor to pay plaintiff alimony in the amount of $1,500.00 per month for a period of ten years and to pay her legal fees.

The above order, which debtor appealed, was affirmed by the Superior Court of Pennsylvania on December 29, 1999.

Debtor filed a voluntary chapter 7 petition on March 15, 2000. The schedules accompanying the petition list assets with a total declared value of $459,356.62 and liabilities totaling $572,198.23. Plaintiff is listed as having a disputed secured claim in the amount of $154,921.96 and a disputed claim for alimony in an unknown amount. Counsel to plaintiff in the divorce proceeding is listed as having a disputed claim in an unknown amount.

At the time he filed his chapter 7 petition, debtor was current on his obligations to pay alimony and child support to plaintiff. He had not, however, made any payment with respect to the above debt in the amount of $154,921.96 he owed to plaintiff or the above debt for legal fees he owed to plaintiff's counsel.

As of May 31, 2000, CHI terminated debtor from his employment and terminated its month-to-month lease for the use of debtor's medical office building and medical equipment. Debtor received from CHI as severance pay a lump-sum payment equal to a full year's salary—i.e., $130,000.00. The net amount debtor received after various deductions was $70,941.52.

After his termination by CHI, debtor once again became a self-employed physician. His office is located in the office building he owns.

Plaintiff commenced the above adversary action on July 5, 2000. She seeks a determination that debtor's obligations to pay her the sum of $154,921.96, to pay her alimony and child support, to pay all outstanding marital debts, and to pay legal fees she incurred in their divorce proceeding are excepted from discharge by §§ 523(a)(5) or (a)(15) of the Bankruptcy Code.

Debtor concedes that his obligations to pay alimony and child support are excepted from discharge by § 523(a)(5). He denies, however, that his obligations to make a lump-sum payment to debtor in the amount of $154,921.96, to pay all marital debts, and to pay legal fees plaintiff incurred in the course of their divorce proceeding are excepted from discharge by either § 523(a)(5) or § 523(a)(15).

The matter was tried on February 23, 2001, at which time both parties were given an opportunity to offer evidence on the issues in the case.

— DISCUSSION —

Section 523 of the Bankruptcy Code provides in part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—....

(5) to a ... former spouse, or child of the debtor for the maintenance for, or support of such spouse or child, in connection with a ... divorce decree or other order of a court of record ...;....

(15) not of the kind described in paragraph (5) that is incurred by the debtor... in connection with a ... divorce decree or other order of court of a court of record ... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that

outweighs the detrimental consequences to a ... former spouse, or child of the debtor....

11 U.S.C. § 523.

■ Because she objects to the discharge of the above obligations, plaintiff has the burden of proving that they fall under one of these exceptions. *Gianakas v. Gianakas (In re Gianakas)*, 917 F.2d 759, 761 (3d Cir.1990). She must do so by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991).

■ Determining whether an obligation is in the nature of alimony, maintenance, or support for purposes of § 523(a)(5) is a matter of federal, not state law. It may so qualify under federal law even though it does not so qualify under state law. We must "look beyond the label" to ascertain its "true nature". *Gianakas*, 917 F.2d at 762.

■ Whether an obligation is in the nature of alimony, maintenance, or support instead of equitable distribution depends on the intention of the parties when the obligation arose. *Id.* If, as in the present case, the controlling instrument is a court order rather than an agreement between the parties, we must ascertain the intent of the court that issued the order. *Pollock v. Pollock (In re Pollock)*, 150 B.R. 584, 588 (Bankr.M.D.Pa.1992); *Marker v. Marker (In re Marker)*, 139 B.R. 615, 621 n. 2 (Bankr.W.D.Pa.1992); *Rooker v. Rooker (In re Rooker)*, 116 B.R. 415, 417 (Bankr. M.D.Pa.1990).

■ We should consider three "factors" when undertaking to determine this intention.

We first should examine the language and substance of the relevant instrument or decree in the context of surrounding circumstances, utilizing extrinsic evidence when necessary. *Gianakas*, 917 F.2d at 762. This threshold inquiry often will not yield conclusive results, however, simply because the parties or the court may not have thought it necessary to indicate what was intended in this regard.

The second "indicator" is the respective financial situations of the parties at the time of the agreement or decree. Relevant considerations may include whether one spouse had custody of minor children at the time, or was unemployed, or was employed in a job that paid considerably less than the other spouse was paid. *Gianakas*, 917 F.2d at 763.

The third "indicator" is the function the obligation served at the time of the agreement or decree. For example, an obligation that served to provide life's necessities such as food, shelter, clothing, or transportation most likely is in the nature of maintenance or support. *Id.*

■ Exceptions to discharge generally are strictly construed in favor of the debtor and against the creditor. This policy is somewhat tempered, however, where the obligation at issue arose in the context of a separation or divorce. Congress decided when it enacted § 523(a)(5) to protect former spouses and dependent children in matters involving alimony, maintenance, or support. Because of this, the exception to discharge found at § 523(a)(15) also is construed less strictly in favor of the debtor than are other exceptions to discharge found at § 523(a). *Matter of Crosswhite*, 148 F.3d 879, 881–82 (7th Cir.1998).

■ Applying the above analytical framework to the facts of this case, we conclude that *all* of the obligations arising out of the state court's order of November 5, 1998, fall within the scope of § 523(a)(5) and therefore are excepted from discharge. We arrive at this conclusion after

reviewing the rationale for imposing the obligations upon debtor that is asserted in the memorandum opinion accompanying the state court's order.

The fact that debtor's obligations to pay plaintiff the sum of $154,921.96 and to pay all of the marital debts were imposed in a section of the court's memorandum opinion captioned "DIVISION OF MARITAL PROPERTY" does not necessarily mean that they are in the nature of equitable distribution as opposed to maintenance or support. We must, as previously noted, "look beyond the label" to determine an obligation's "true nature". *Gianakas*, 917 F.2d at 762. The state court probably did not anticipate when it issued its decision that debtor would wind up in bankruptcy. Had it so anticipated, the court probably would have utilized different terminology to indicate its intent in imposing the obligations on debtor.

The court's asserted reasons for imposing these obligations on debtor, as set forth on pages 5 and 6 of its memorandum opinion, clearly indicate that they were imposed as a means of compensating for the significant disparity in the parties' respective income-earning capabilities and to enable plaintiff and their minor children, of whom she had custody, to maintain themselves at something more than a subsistence level.

In explaining the 75%–25% distribution of marital assets, the court observed that plaintiff's employment skills and income-earning potential were limited by her high-school education whereas debtor would be able to continue practicing medicine. The court further pointed out that plaintiff, whose income was far less than debtor's, had recently purchased a townhouse that she had to encumber with a substantial mortgage. After noting that the parties had enjoyed a comfortable standard of living at the time of their separation, the court ruminated that debtor probably would be able to maintain that standard whereas it was "very questionable" that plaintiff would. Finally, the court noted that plaintiff had custody of the parties' minor children.

Additional support for the proposition that the state court imposed these obligations upon debtor for the purpose of providing maintenance or support for plaintiff and the parties' minor children is found in the section of the memorandum opinion captioned "ALIMONY, COSTS AND COUNSEL FEES", wherein it required debtor to pay alimony to plaintiff. Virtually the same reasoning asserted in support of imposing the previous obligations upon debtor is utilized in requiring debtor to pay alimony to plaintiff. If the reasons given by the court for requiring debtor to pay alimony to plaintiff evidence an intent to provide maintenance or support for purposes of § 523(a)(5), those same reasons should evidence the same intent with respect to the obligations imposed on debtor to pay plaintiff the sum of $154,921.96 and to pay all of the marital debts.

As for the counsel fees debtor is obligated to pay, they too are treated as falling within the scope of § 523(a)(5) because plaintiff incurred the fees in the context of seeking maintenance or support for herself and their minor children. *Macy v. Macy*, 114 F.3d 1, 3 (1st Cir.1997); *Hudson v. Raggio & Raggio, Inc. (Matter of Hudson)*, 107 F.3d 355, 357 (5th Cir.1997); *In re Crawford*, 236 B.R. 673, 678 (Bankr. E.D.Ark.1999). To hold otherwise would undermine the rationale for requiring a debtor to pay maintenance or support for purposes of § 523(a)(5).

The fact that debtor is obligated to pay plaintiff's counsel rather than plaintiff herself is not significant in this regard. It does not preclude a determination that the

obligation qualifies as maintenance or support for purposes of § 523(a)(5). *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir.1995); *In re Miller*, 55 F.3d 1487, 1490 (10th Cir.), *cert. denied*, 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995); *Rosenman v. Jarrell (In re Jarrell)*, 251 B.R. 448, 451 (Bankr.S.D.N.Y.2000).

 Debtor has painted an extremely bleak picture of his present financial condition and relies heavily on § 523(a)(15)(A) and/or (B) as support for his position that the obligation to pay the sum of $154,921.96 to plaintiff is dischargeable. His efforts in this regard are to no avail. In light of our determination that all of the obligations arising from the memorandum opinion and order issued on November 5, 1998, are excepted from discharge by § 523(a)(5), it is not necessary to consider whether or not any of the obligations is excluded from discharge by § 523(a)(15). By its express terms, § 523(a)(15) applies to obligations that are *not* "of the kind described in paragraph (5)"—i.e., § 523(a)(5). We have determined that all of the obligations in question *are* "of the kind described in paragraph (5)" and need look no further.

Were it necessary to consider § 523(a)(15) to fully resolve this matter, we would conclude that neither of the exceptions, set forth at § 523(a)(15)(A) and (B), to the exception to discharge found at § 523(a)(15) applies here. We remain convinced that debtor, whose income-earning capacity is many times greater than plaintiff's, will continue to enjoy a far more prosperous life than plaintiff ever will. We would, in other words, conclude that debtor remains able to satisfy his obligations to plaintiff despite debtor's overly gloomy depiction of his financial plight. Also, we are convinced that the detriment plaintiff would suffer would far outweigh any benefit debtor would enjoy if these obligations were discharged.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** this 5th day of August, 2001, in accordance with the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that **ALL** of the obligations imposed upon debtor in the memorandum opinion and order of the Court of Common Pleas of Bedford County, Pennsylvania, issued on November 5, 1998, are **NOT DISCHARGEABLE**.

It is **SO ORDERED**.