**In re Ronald G. BROWN and Lisa M. Brown, Debtors.**

**Jeanne A. Brown, Plaintiff,**

**v.**

**Ronald G. Brown, Defendant.**

**Bankruptcy No. 01–29317–BM.**
**Adversary No. 02–02205–BM.**

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 6, 2003.

---

Robert J. Tate, Cook & Tate, Pittsburgh, PA, for Plaintiff.

Michael J. Yurcheshen, Pittsburgh, PA, for Defendant.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff seeks a determination that the obligation of debtor Ronald G. Brown, which arose out of a divorce proceeding, to pay her a sum certain at a specified monthly rate with interest on the outstanding balance, is excepted from discharge by § 523(a)(5) or § 523(a)(15) of the Bankruptcy Code.

Debtor denies that the obligation is excepted from discharge by either of these provisions.

We find, for reasons set forth below, that the obligation was intended to provide spousal support for plaintiff and conse-

quently is excepted from discharge by § 523(a)(5).

## — FACTS —

Plaintiff and debtor were married in July of 1985. They have two minor children as a result of their marriage, one of whom was born in January of 1986 and the other in September of 1992. Plaintiff primarily was responsible for raising the children during their marriage and presently has custody of them.

Plaintiff, who is in her early forties, is a high school graduate. She also attended college for one year and a business school for nine months. Prior to their marriage, plaintiff was employed as a waitress in a restaurant and worked in a donut shop. She was a file clerk from 1987 until 1991.

Debtor, who is in his mid-forties, has a GED certificate and took some college-level courses while in the military. He advises that he is a member of MENSA and that he has an IQ level of "genius".

In 1991, debtor purchased all of the outstanding shares of stock of American Jewelry Repair, Inc. and did business as Fast Fix Jewelry Repairs in a shopping mall kiosk located in a suburb of Pittsburgh. Debtor worked full time operating the business while plaintiff worked on a part-time basis keeping the books and records of the business and paying its bills. She received a salary which was used to pay household bills.

The parties' income, all of which was derived from the business, was approximately $71,000 in 1997 and again in 1998.

Plaintiff and debtor also purchased a three-bedroom house in 1991 which served as the marital residence. The purchase price was $55,000. The monthly payment due on the mortgage is $635.

On December 18, 1995, after their marriage had soured, plaintiff commenced a divorce proceeding against debtor in the Court of Common Pleas of Allegheny County, Pennsylvania. She asserted claims in the complaint for child support, alimony *pendente lite*, alimony, and equitable distribution.

Plaintiff and debtor were permanently separated on January 2, 1996. Plaintiff continued working for the jewelry repair business after their separation until debtor terminated her employment in September of 1996.

Plaintiff was not successful in finding employment after the termination and eventually began operating a child care facility out of the former family residence.

The state court entered orders in the divorce proceeding in December of 1996, April of 1997, and September of 1998 directing debtor to pay child support and alimony *pendente lite* in amounts totaling $1,555, $1,800, and $2,000, respectively.

The state court issued a decree on October 14, 1998, granting the parties a divorce.

After conducting an evidentiary hearing, the state court issued a final order in the divorce proceeding on June 1, 1999.

Debtor was directed to pay child support in the amount of $1,077 per month and to pay alimony to debtor for twelve months in the amount of $200 per month. The judge in the divorce proceeding found in directing these payments that debtor's monthly income at that time was $4,065 and that plaintiff's was $1,000.

Plaintiff was awarded the marital residence subject to all outstanding liens and encumbrances against it and a 1993 Dodge Caravan. She also was awarded the sum of $25,040.

Debtor was awarded all of the capital stock of the jewelry repair business subject to an obligation to plaintiff in the

amount of $25,040 payable at the rate of $700 per month with interest at the rate of six percent *per annum* on the outstanding balance. He also was awarded a 1997 Toyota SUV which the jewelry repair business had purchased in its name for $38,000 for debtor's use.

Neither debtor nor plaintiff appealed the order of June 1, 1999.

Plaintiff has not remarried since entry of the divorce decree. Debtor, by contrast, married co-debtor Lisa M. Brown in November of 1998, approximately one month after the divorce was granted. They have no children as a result of their marriage and have purchased a house which serves as their marital residence.

Debtor sold the jewelry repair business to a third party for $170,000 in October of 1999. The purchase price was payable in full in installments within twelve months of the sale date.

Debtor made the required child support payments for a period of time subsequent to the order of June 1, 1999, and paid plaintiff alimony for the required twelve months. He also made the required monthly payment at issue in this case for a period of time.

Without first obtaining court approval, debtor unilaterally reduced the required child support payments in June of 2001 and ceased making them altogether in August of 2001. He resumed the child support again, but at a reduced level, in December of 2001. To date debtor has not resumed making the required $700 per month payments to debtor.

Debtors purchased a dry cleaning business from third parties in February of 2001 for $200,000.

After the dry cleaning business failed, American Jewelry Repair Center, doing business as Clothing Care Center, filed a voluntary chapter 7 petition in this court on September 7, 2001. The chapter 7 trustee has since liquidated the assets of the dry cleaning business, including the 1997 Toyota SUV which American Jewelry Repair Center had purchased for debtor's use.

Debtors also filed a voluntary joint chapter 7 petition in this court on September 7, 2001. A debt in the amount of $9,200 owed to plaintiff for what is characterized as court-ordered equitable distribution is listed as an undisputed claim on the bankruptcy schedules.

Plaintiff and debtor entered into a consent order in their divorce proceeding on February 11, 2002. Among other things, debtor's obligatory child support payments were reduced to $510 per month with the amount of arrears "to be determined" at a later time.

The consent also contained the following provision:

THE $700.00 PER MONTH LABELED AS SPOUSAL SUPPORT ON THE PACSES SYSTEM IS ACTUALLY EQUITABLE DISTRIBUTION AS ORDERED BY JUDGE KAPLAN AND SHOULD REMAIN ON THE SYSTEM PENDING THE RESOLUTION OF THE DEFENDANT'S BANKRUPTCY PETITION.

The order was consented to by debtor, plaintiff, and their respective counsel in the divorce proceeding and was approved by a judge different than the judge who had issued the order of June 1, 1999.

After the dry cleaning business had failed, debtor found employment in November of 2001 at a jewelry store for which he was paid at the rate of $14.25 per hour. His present gross wage is $15.00 per hour. Co-debtor Lisa Brown also found employment for which her gross wage is $12.50 per hour. Her income is

combined with debtor's to pay their living expenses and other obligations.

Plaintiff continues to operate a day care facility out of her personal residence. Her gross income in 2001 was approximately $14,000 and was about the same for 2002.

Plaintiff commenced the present adversary action against debtor on April 24, 2002. She seeks a determination that the unpaid portion of the $25,040 obligation debtor owes to her is excepted from discharge pursuant § 523(a)(5) or, alternatively, pursuant to § 523(a)(15) of the Bankruptcy Code. There does not appear to be any dispute that the debt owed by debtor for child support is not dischargeable. There also is no dispute concerning the alimony debtor paid to plaintiff for twelve months, which was paid in full.

The matter was tried on January 15, 2002, at which time both parties were given an opportunity to offer evidence on the issues in the case.

— DISCUSSION —

Section 523 of the Bankruptcy Code provides in part as follows:

> (a) A discharge under section 727...of this title does not discharge an individual debtor from any debt—....
>
>> (5) to a ...former spouse...of the debtor for the...support of such spouse...in connection with a...divorce decree...of a court of record ....; ....
>>
>> (15) not of the kind described in paragraph (5) that is incurred by the debtor...in connection with a...divorce decree...of a court of record ...unless—
>>
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent...; or
>>
>> (B) discharging such debt would result in a benefit to debtor that outweighs the detrimental consequences to a...former spouse, or child of the debtor....

11 U.S.C. § 523(a).

■ Because she objects to the discharge of debtor's obligation to pay her the outstanding balance of the $25,040 debt at the monthly rate of $700 with interest at the rate of six percent *per annum,* as mandated by the order of June 1, 1999, plaintiff has the burden of proving that the obligation is excepted from discharge. *Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 761 (3d Cir.1990). She must do so by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991).

■ Federal law, not state law, applies when determining whether an obligation is in the nature of support for purposes of § 523(a)(5). It may, for instance, so qualify under federal law while not so qualifying under state law. We must look "beyond the label" attached to a given obligation to ascertain its "true nature". *Gianakas,* 917 F.2d at 762.

■ Whether an obligation is in the nature of support as opposed to equitable distribution depends on the intention extant when the obligation was created. If, as in the present case, the controlling instrument is a court order instead of an agreement between the parties, we must ascertain the intention of the court that issued the order. *Mendez v. Mendez (In re Mendez),* 275 B.R. 482, 488 (Bankr. W.D.Pa.2001); *also Stahl v. Stahl (In re Stahl),* 261 B.R. 164, 168 (Bankr.W.D.Pa. 2001).

■ We should consider three "factors" when undertaking to determine this intention and the true nature of an obligation.

We first should consider the language and substance of the relevant instrument or decree in the context of surrounding circumstances, taking extrinsic evidence into account if necessary. *Gianakas,* 917 F.2d at 762.

We also should consider the respective financial situations of the parties at the time of the agreement or decree. Relevant considerations may include whether one spouse had custody of the parties' minor children at the time, was unemployed, or was employed in a job that paid considerably less than the other spouse was paid.

Finally, we should consider the function the obligation served at the time it arose. For instance, an obligation that served to provide life's necessities—e.g., food, shelter, clothing or transportation—most likely was intended as support. *Id.*

■ Our inquiry is limited to determining the intended nature of the obligation *at the time it arose.* Where appropriate and permitted by state law, a party to a divorce proceeding can resort to the state court to seek modification of the obligation when circumstances have changed. *Id.*

The obligation at issue here arose out of the order of June 1, 1999, issued by the judge then presiding over the divorce proceeding. Ascertaining the nature of the obligation at issue therefore requires us to determine the intention of *that* judge *at that time* in imposing *that* obligation upon debtor.

■ Exceptions to discharge generally are construed in favor of the debtor and against the creditor objecting to the discharge of the debt owed to it. This policy is somewhat tempered, however, if the obligation in question arose in the context of a separation or divorce. Congress decided when it enacted § 523(a)(5) to protect former spouses and dependent children of a debtor in matters involving support. For this same reason, the exception to discharge found at § 523(a)(15) also is construed less strictly in favor of the debtor than are exceptions to discharge found elsewhere at § 523(a). *Matter of Crosswhite,* 148 F.3d 879, 881–82 (7th Cir.1998).

■ After considering all of the evidence presented at trial, we conclude that debtor's obligation to pay plaintiff the sum of $25,040 at the rate of $700 per month with six percent interest on the outstanding balance qualifies for purposes of § 523(a)(5) as spousal support for plaintiff. As a consequence, the obligation is *not* dischargeable.

The language of the order of June 1, 1999, gives no indication of the state court's intention when it imposed upon debtor the obligation at issue here. The order contains no statement by the court of its reason(s) for imposing the obligation upon debtor. Moreover, it is not possible to infer its intention in this regard from the structure and substance of the order. Debtor's bankruptcy filing was not anticipated when the order was issued and undoubtedly was not taken into consideration by the state court.

Consideration of the second and third "factors" articulated in *Gianakas,* however, leads us to conclude that the obligation in question was intended to provide support for plaintiff.

There was considerable disparity in the parties respective incomes when the obligation was imposed upon debtor. According to the state court, debtor's monthly income as June of 1999 was $4,065 while plaintiff's was only $1,000. We have no

reason to question the accuracy of this finding. Plaintiff also had custody of the parties' two minor children at the time. Moreover, the former marital residence, which was awarded to plaintiff, was encumbered by a mortgage which plaintiff had to pay if she was to keep the house. The monthly mortgage payment was $635.

These considerations taken in the aggregate compellingly indicate that the obligation imposed upon debtor which is at issue here was intended to reduce the disparity in their respective incomes.

After paying child support ($1,077), alimony ($200), and the obligation at issue here ($700), debtor's monthly income would be reduced from $4,065 to $2,088.

Payment to plaintiff of alimony ($200) and the obligation at issue here ($700) would, on the other hand, increase plaintiff's monthly income from $1,000 to $1,900, only slightly less than debtor's. When viewed in this light, it becomes apparent that the state court intended to provide some semblance of parity with respect to the parties' incomes when it imposed the obligation at issue here upon debtor.

This conclusion is bolstered when we consider the function served by the obligation when it was imposed on June 1, 1999. Without these payments, plaintiff almost certainly would not have had the resources with which to pay the mortgage and utilities and still have the wherewithal to provide herself with the other necessities of life.

It was noted previously that the consent order of February 11, 2002, modifying the amount of debtor's monthly child support payments contains a statement that the $700 per month payment "is actually equitable distribution as ordered by Judge Kaplan". Our conclusion that this obligation was intended as spousal support is not affected by this language in the consent order.

The consent order was signed by plaintiff, debtor, and their respective counsel in the divorce proceeding. It also was approved by a judge other than the judge who issued the order of June 1, 1999.

It is of no consequence for the issue presented in this case that plaintiff, debtor, and their respective counsel in the divorce proceeding signed the consent order. The controlling instrument in this regard is the order of June 1, 1999, which imposed the obligation at issue here.

In addition, it is of no consequence that the consent order was approved by a judge. As was noted, the judge who approved the consent order was *other than* the judge who issued the order of June 1, 1999. What matters is the intention of the judge who issued the June 1, 1999 order.

We have determined after taking into consideration the second and third "factors" set forth in *Gianakas* that the judge who initially imposed the obligation upon debtor intended *at that time* that the obligation provide plaintiff with a means of supporting herself. What plaintiff, debtor, and their attorneys in the divorce proceeding stipulated to in a consent order which was approved by a different judge is not relevant to the issue in this case.

■■■ Debtor has presented an extremely bleak picture of his present financial situation and relies heavily on § 523(a)(15)(A) and (B) to support his contention that the debt in question is dischargeable after all. His efforts in this regard were to no avail. We need not consider whether or not the obligation is excepted from discharge by § 523(a)(15) in light of our determination that it is excluded from discharge by § 523(a)(5). By its express terms, § 523(a)(15) applies to debts that are *not* "of the kind described in

paragraph (5)"—i.e., § 523(a)(5). We have determined that the obligation in question *is* "of the kind described in paragraph (5)" and therefore need consider the matter no further.

Were it necessary to consider § 523(a)(15), we would conclude that neither of the exceptions, set forth at § 523(a)(15)(A) and (B), to the exception to discharge found at § 523(a)(15) applies here. We are satisfied that debtor would be able to satisfy this obligation to plaintiff, notwithstanding the gloomy depiction of his financial predicament and his future prospects. Moreover, we would find that the detriment plaintiff would suffer would outweigh the benefit debtor would enjoy if the obligation were discharged.