OPINION OP THE COURT
 

 SLOVITER, Circuit Judge.
 

 This is an appeal from the district court’s order affirming the bankruptcy court’s determination that an obligation of appellant Paul Chris Gianakas to pay the second mortgage on his prior marital home is in the nature of alimony, maintenance or support, and therefore is not subject to the automatic stay of 11 U.S.C. § 362 (1988) and is not dischargeable pursuant to 11 U.S.C. § 523(a)(5) (1988). This court has jurisdiction under 28 U.S.C. § 158(d) (1988).
 

 I.
 

 Appellant Paul Gianakas (Paul) and ap-pellee Karen Gianakas (Karen) were divorced in March 1983. The divorce decree incorporated a settlement agreement which provided,
 
 inter alia,
 
 that Paul would pay Karen alimony until January 1988, make child support payments of $200 for each of the couple’s four children under the age of 18, with the amount subject to adjustment depending upon his income, and pay certain enumerated expenses for the children. It was also agreed that Paul would convey to Karen the marital home, which was subject to certain encumbrances, and that he would “assume and pay until satisfied the second mortgage” on that marital home. The settlement agreement made Karen solely responsible for the first mortgage and an additional mortgage on an attached garage. After the divorce, she continued to live in the marital home with the four children.
 

 Paul stopped making payments on the second mortgage in January 1988, and on October 3, 1988, he filed a claim for relief under Chapter 7 of the United States Bankruptcy Code. On November 14, 1988, Karen filed a motion in the bankruptcy court for a determination that Paul’s obligation for the second mortgage was not subject to the automatic stay of 11 U.S.C. § 362(a)
 
 *761
 
 because it was in the nature of alimony, maintenance or support.
 

 After an evidentiary hearing, which the bankruptcy court accorded the status of an adversary proceeding, the court agreed with Karen’s position and found that appellant’s second mortgage obligation was in the nature of alimony, maintenance or support. Therefore, it ruled that pursuant to 11 U.S.C. § 362(b)(2), the debt is not subject to the automatic stay and is exempt from discharge pursuant to 11 U.S.C. § 523(a)(5).
 
 In re Gianakas,
 
 100 B.R. 787 (Bankr.W.D.Pa.1989). Paul appealed to the district court, which affirmed.
 
 In re Gianakas,
 
 112 B.R. 737 (W.D.Pa.1990). He now appeals to this court.
 

 II.
 

 Under the Bankruptcy Code, the general discharge which a debtor obtains under 11 U.S.C. § 727(b) for debts that arose before the date of the order for relief,
 

 does not discharge an individual debtor from any debt ... to a spouse, former spouse, or child of the debtor,
 
 for alimony to, maintenance for, or support of such spouse or child,
 
 in connection with a separation agreement, divorce decree or other order ..., or property settlement agreement, but not to the extent that ... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support....
 

 11 U.S.C. § 523(a)(5) (1988) (emphasis added).
 

 Concomitantly, “[t]he filing of a petition ... [in bankruptcy] does not operate as a stay ... of the collection of alimony, maintenance, or support from property that is not property of the estate.” 11 U.S.C. § 362(b)(2) (1988). These provisions reflect the congressional preference for the rights of spouses to alimony, maintenance or support over the rights of debtors to a “fresh start” free of debts.
 
 Forsdick v. Turgeon,
 
 812 F.2d 801, 804 (2d Cir.1987).
 

 A party, such as appellee here, who objects to the discharge of a particular debt has the burden of proving nondis-chargeability. Bankruptcy Rule 4005;
 
 Matter of Long,
 
 794 F.2d 928, 930 (4th Cir.1986);
 
 In re Kleppinger,
 
 27 B.R. 530, 531 (Bankr.M.D.Pa.1982). Paul Gianakas asserts as a preliminary matter that the bankruptcy court erroneously placed on him the burden of proving dischargeability. Unfortunately, the bankruptcy court’s statements on this issue are not pellucid. There was one occasion during the bankruptcy proceeding when the court stated, to Paul Gianakas’ counsel: “It’s your burden on the motion for relief from stay ... to show that this is not in the nature of alimony and support and/or that the collection is going to be from ... estate proceeds.” App. at 97. However, elsewhere in the proceeding the bankruptcy court stated correctly that the burden of proof was on the movant, Karen Gianakas.
 
 See, e.g.,
 
 App. at 108 (“The burden of proof remains on the movant in this proceeding from start to finish.”);
 
 see also
 
 App. at 34.
 

 Faced with this inconsistency, the district court undertook to review the bankruptcy court’s findings in light of the burden of proof placed upon Karen. Gianakas, and concluded that the findings of fact by the bankruptcy court that the intent of the parties was to create an obligation for support, that the needs of the parties imply that the obligation was for support, and that the function of the obligation was to provide support are not clearly erroneous. Because the district court placed the burden of proof on the party that must bear it and thereafter reached the same result that the bankruptcy court reached, Paul was not prejudiced even if the bankruptcy court had misplaced the burden of proof. Thus, we turn to the principal issue on appeal, whether Karen met her burden of proof to show that Paul’s obligation to pay the second mortgage was in the nature of alimony, maintenance or support.
 

 III.
 

 When we act “[a]s an appellate court twice removed from the primary tribunal, we review both the factual and the legal determinations of the district court for er
 
 *762
 
 ror.”
 
 Universal Minerals, Inc. v. C.A. Hughes,
 
 669 F.2d 98, 101 (3d Cir.1981). The findings of fact by the bankruptcy court on the underlying or historical facts, such as the intent of the parties at the time of the agreement, are subject to review for clear error. Of course, questions of law, which would include identification of the factors that are relevant to the determination, are subject to plenary review.
 
 See Resyn Corp. v. United States,
 
 851 F.2d 660, 664 (3d Cir.1988).
 

 This is the first opportunity this court has had to analyze which factors should be considered by the bankruptcy court in determining whether an obligation arising out of a divorce settlement is in the nature of alimony, maintenance or support for the purposes of the Bankruptcy Code. The statute explicitly provides that a debt “to a spouse, former spouse, or child of the debtor” is not exempted from discharge merely because it is “designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance, or support.” 11 U.S.C. § 523(a)(5)(B). Thus, the court must look beyond the label attached to an obligation by a settlement agreement to examine its true nature.
 
 See
 
 3 Collier on Bankruptcy H 523.15 (15th ed.1990). As the court noted in
 
 In re Yeates,
 
 807 F.2d 874, 878 (10th Cir.1986), “a debt could be in the ‘nature of support’ under section 523(a)(5) even though it would not legally qualify as alimony or support under state law.”
 

 Moreover, although the decree or settlement establishing the obligation almost invariably arises in the context of a state court proceeding, whether the obligation is in the nature of alimony, maintenance or support for the purposes of the Bankruptcy Code is a question of federal, not state, law. H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977),
 
 reprinted in
 
 1978 U.S. Code Cong. & Admin.News 5963, 6320; S.R. No. 989, 95th Cong., 2d Sess. 79 (1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Admin.News 5787, 5865;
 
 Sylvester v. Sylvester,
 
 865 F.2d 1164, 1166 (10th Cir.1989).
 

 In a recent decision reviewing the relevant case law, the Pennsylvania Superi- or Court listed more than fifteen factors which have been referred to by various courts in determining whether the obligation in the particular case was to be treated as one for support.
 
 See Buccino v. Buccino,
 
 — Pa.Super. -, 580 A.2d 13 (Pa.Super.1990).
 
 [1]
 
 We believe that whether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement.
 
 See In re Yeates,
 
 807 F.2d at 878;
 
 Tilley v. Jessee,
 
 789 F.2d 1074, 1077 (4th Cir.1986);
 
 In re Miller,
 
 34 B.R. 289, 292 (Bankr.E.D.Pa.1983). That intent can best be found by examining three principal indicators. The many other factors referred to by various courts are merely elements of these indicators.
 

 First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary.
 
 See In re Yeates,
 
 807 F.2d at 878;
 
 In re Miller,
 
 34 B.R. at 292. However, it is likely that “neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose.”
 
 In re Wisniewski,
 
 109 B.R. 926, 929 (Bankr.E.D.Wis.1990). Therefore, the parties and the state courts may not have focused on
 
 *763
 
 whether a particular obligation was to serve as support or as a property settlement unrelated to support.
 
 In re Alloway,
 
 37 B.R. 420, 425 (Bankr.E.D.Pa.1984). As the Pennsylvania Superior Court noted, even an obligation designated as property settlement may be related to support because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution.
 
 Buccino,
 
 — Pa.Super. at-, 580 A.2d at 18-19. In fact, “property division often achieves the same goal as alimony,
 
 i.e.,
 
 support.”
 
 Id.
 

 Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator to which we must look to assist in ascertaining the parties’ intent is the parties’ financial circumstances at the time of the settlement. The facts that one spouse had custody of minor children, was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties’ financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support.
 
 See Shaver v. Shaver,
 
 736 F.2d 1314, 1317 (9th Cir.1984).
 

 Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support.
 
 See In re Yeates,
 
 807 F.2d at 879.
 

 There is some suggestion in the appellant’s brief that Karen failed to meet her burden to show that the obligation continues to be necessary to support her and the children. The courts have divided on the relevance of this factor. The minority view, represented by the decision of the Sixth Circuit in
 
 In re Calhoun,
 
 715 F.2d 1103, 1109 (6th Cir.1983), which also begins with an examination into the parties’ intent at the time of the settlement, looks as well into the parties’ present financial conditions to determine whether an obligation is currently necessary for maintenance or support.
 
 Id.
 
 at 1109;
 
 see also In re Pollock,
 
 90 B.R. 747 (Bankr.E.D.Pa.1988). It also requires federal courts to “determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable.”
 
 In re Calhoun,
 
 715 F.2d at 1110.
 

 This position has been rejected by most of the courts to have considered it.
 
 See, e.g., Forsdick v. Turgeon,
 
 812 F.2d 801, 803 (2d Cir.1987);
 
 Draper v. Draper,
 
 790 F.2d 52, 54 (8th Cir.1986);
 
 In re Harrell,
 
 754 F.2d 902, 906-07 (11th Cir.1985);
 
 see also Buccino,
 
 — Pa.Super.-, 580 A.2d at 25. As explained in
 
 Forsdick,
 
 812 F.2d at 803-04, an inquiry into present need “would put federal courts in the position of modifying matrimonial decrees of state courts, thus interfering with the delicate state systems for dealing with the dissolution of marriages.... ” It would also serve essentially as a penalty for a former spouse who may have struggled to gain self-sufficiency.
 

 We agree with the majority view, and hold that the inquiry of the bankruptcy court should be limited to the nature of the obligation at the time it was undertaken. Where appropriate and authorized by state law, debtors can resort to state court to seek modifications- of divorce settlements on the grounds of changed circumstances.
 

 Turning to the evidence adduced in this case, the parties’ testimony predictably differed on whether Paul’s obligation for the second mortgage was intended as support at the time of the settlement agreement. The parties agree, however, that both intended that Karen and the children would maintain and live in the former marital home. As the bankruptcy court concluded, examination of the parties’ relative financial situations at the time of the divorce demonstrates that this intent could not have been carried out without Paul paying the second mortgage obligation.
 

 Karen had no income at the time of the divorce. By the terms of the settlement, she received $800 monthly (now increased to $860) from Paul as support for the four children, plus $200 a month in alimony, which ended in 1988. She assumed respon
 
 *764
 
 sibility for the home s first mortgage and garage mortgage, payable at $414.39 per month and $114.31 per month, respectively, for a total of $528.70 monthly. Karen testified that if she had to pay the additional $225 per month on the second mortgage indefinitely, she could not continue to live in the home.
 

 In light of these facts, the bankruptcy court could reasonably have concluded that at the time of the settlement the parties intended Paul’s payment of the second mortgage to serve as a contribution toward maintenance and support of lodging for Karen and the children. The parties’ financial circumstances at the time of the settlement agreement indicate that Karen would not have been able to maintain the family home without Paul’s payment of the obligation for the second mortgage. Finally, provision for the family home is, together with food and transportation, one of the traditional components of support and maintenance.
 
 See In re Yeates,
 
 807 F.2d at 879. The great weight of authority holds that a spouse’s assumption of mortgage debts which enable members of the family to remain in the marital residence is an obligation in the nature of support, maintenance or alimony.
 
 See, e.g., In re Sweeny,
 
 99 B.R. 192 (Bankr.D.Conn.1989);
 
 Matter of Coverdale,
 
 65 B.R. 126 (Bankr.M.D.Fla.1986);
 
 In re Wright,
 
 51 B.R. 630 (Bankr.S.D.Ohio 1985);
 
 In re Thomas,
 
 21 B.R. 571 (Bankr.E.D.Pa.1982). Education and medical expenses are in a similar category.
 
 See Draper v. Draper,
 
 790 F.2d at 54.
 

 Although each determination of the nature of an obligation involves an
 
 ad hoc
 
 inquiry, in light of the record in this case we agree with the district court that it was not error for the bankruptcy court to have concluded, even though the burden of proof was upon Karen, that Paul’s obligation to make payments on the second mortgage was in the nature of alimony, maintenance, or support. It follows that the debt was not dischargeable and was unaffected by the automatic stay.
 

 IV.
 

 For the reasons set forth above, we will affirm the order of the district court upholding the bankruptcy court’s order.
 

 [1]
 

 . The factors listed were: "the label given to the obligation in the underlying instrument; the express terms of the obligation; the form and placement of the debt in the original agreement or decree; whether the debt terminates on the occurrence of death, remarriage, etc.; the economic disparity between the parties; the length of the marriage; whether there are minor children in the care of the creditor spouse; whether the support award would have been adequate absent the liability in question; the intention of the court to provide support to the creditor spouse or children; the age, employability and educational levels of the parties; the language of the decree and the inferences which can be drawn therefrom; whether the creditor spouse suffered an economic disadvantage as a result of the marriage; whether the debts are payable directly to the former spouse; the circumstances leading to the dissolution of the marriage; and the financial resources, actual or potential, of each spouse.”
 
 Buccino,
 
 — Pa.Super. at-, 580 A.2d at 22.