**In re Charles Randy LANE, Debtor.**

**Judith A. Lane, Plaintiff,**

v.

**Charles Randy Lane, Defendant.**

**Bankruptcy No. 96–287.**
**Adversary No. 01–761.**

United States Bankruptcy Court,
D. Delaware.

Sept. 26, 2001.

Elwood T. Eveland, Jr., Wilmington, DE, for Plaintiff, Judith A. Lane.

Erin K. Brignola, Bear, DE, for Debtor, Charles Randy Lane.

### MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

The matter before the court is Plaintiff Judith A. Lane's motion for summary judgment seeking to have her claim adjudicated nondischargeable under 11 U.S.C. § 523(a)(5) or (a)(15).[2] The (a)(15) claim was withdrawn during the pretrial conference on May 22, 2001, as inapplicable in a chapter 13. After the parties were divorced in March of 1993 and while the issue of division of property was pending in the state court, Debtor filed this chapter 13 case on March 7, 1996. The Bankruptcy Court granted relief from stay to allow the state court to proceed with issues concerning property division, interim alimony, alimony, maintenance, and illegal dissipation of assets. The state court issued its decision on June 9, 2000, on the issues of property division and alimony. The parties each sought reimbursement of attorney's fees and costs. The state court denied the Debtor's claim and permitted Plaintiff to file a motion for same. In a Letter Decision dated January 8, 2001, the court granted in part and denied in part the Plaintiff's motion for attorney's fees and costs. We will address this *infra*.[3]

*Facts*

The material facts are not in dispute and are drawn from the two written Letter Decisions and Orders of the state court. The parties were married in July of 1971, separated in 1992, and divorced in March of 1993, a marriage of over 21 years. The parties had three children, all of whom are now adults.[4] Although they were divorced

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

2. Plaintiff's motion for summary judgment also refers to a determination of nondischargeability under § 523(a)(4)(a)(4) is not raised in the Complaint. Therefore, to the extent the motion asks for summary judgment on the basis of § 523(a)(4), it will be denied as outside the scope of the Complaint.

3. In the January 8, 2001, Letter Decision the court also denied the Debtor's motion for reargument of the June 9, 2000, order and granted his motion to strike Plaintiff's state court counsel's letter request for an extension of time to file a motion for reargument.

4. Plaintiff has a minor child from a post-separation relationship. She testified that she does not receive support from the minor's father but a financial report filed with the state court indicated that she receives $500 per month in support. The state court found that the existence of the minor had no bearing on the issue of whether the Debtor should be

in 1993, the parties continued to share the marital residence until June of 1996 when Plaintiff moved to her mother's house. In March of 1998 Plaintiff's mother died and she inherited the residence. According to the state court, the total value of Plaintiff's assets was $100,000.

At the time of the state court's decision in June of 2000, Plaintiff was 50 years old. She suffered from depression and related conditions as well as scoliosis, colitis, and numbness of the hand. From 1990 until 1995 Plaintiff was employed as an assistant manager earning $23,000 per year but left that job due to a conflict with another employee. In 1997 she obtained part-time employment earning minimum wage. The state court concluded that Plaintiff was able to earn at least $23,000 per year notwithstanding her employment at the time of the divorce proceedings. The court also concluded that her net imputed monthly income was $1,974 and that her reasonable expenses should be $1,756, although Plaintiff testified that her living expenses were $2,098 and her actual income at the time was less than the $1,974 imputed by the court. According to the state court's analysis, Plaintiff should have had disposable income of $218 per month. Two of the parties' adult children live with Plaintiff. The state court's decision contains no information on whether these children contribute to household expenses.

At the time of the state court hearing Debtor was 49 years old. Debtor's health is good. He was employed at an annual salary of $57,000 until 1992 when he was fired. At the time of the state court's opinion Debtor was earning $54,000 per year, approximately $4,165 each month. His expenses totaled $3,562 per month, leaving him with monthly disposable in-

come of $603. During the marriage Debtor also earned approximately $15,000 a year from supplemental employment. One of the parties' adult children resides with Debtor and, again, the state court decision contains no information on whether this child contributes to household expenses.

At the time of separation, which was eight months before the divorce and eight years before the state court decision, the marital residence was worth $169,000 and was subject to a mortgage of $140,000. In addition, there was a tax lien of approximately $21,000.[5] Prior to the divorce, the residence was partially destroyed in a fire. The Debtor repaired the property with insurance proceeds and continued to live there. The state court allocated the net insurance proceeds as part of its order that required Debtor to pay $52,308 to Plaintiff. The state court was faced with the following issues: (1) the amount of equity in the former marital residence and to which spouse it should be awarded; (2) the disposition of insurance proceeds resulting from a fire at the marital residence; (3) whether income or assets from his side business should be imputed to Debtor; (4) the division of proceeds from Debtor's retirement account; and (5) the marital debts.

With respect to the residence, the court ruled that it should be sold and the proceeds divided unless Debtor paid Plaintiff what was owed her in accordance with the property division ($52,308). With respect to the income from Debtor's computer business which he conducted on the side, the court found no evidence that the funds in a bank account in the business's name were marital funds. The parties were also each awarded their own retirement accounts, even though the court found that

paying support inasmuch as the minor is not Debtor's child.

5. The parties had other assets including two vehicles, a life insurance policy which the wife cashed in prepetition and their individual retirement plans which each cashed in.

over $80,000 of the $100,000 that Debtor received was retained by him when he was fired from his job in 1992, before the divorce. The court also found that, while married, the parties incurred "exorbitant debts" but denied Debtor's claim for contribution from Plaintiff with respect to marital debts he claimed to have paid. The court also denied his claim for credit for payment of household debt in light of, *inter alia*, his greater earning capacity which made it impossible for each party to have contributed equally to the retirement of the debt. In addition, Debtor had been receiving the tax benefit from payment of the mortgage on the marital residence. At trial in the state court, Debtor admitted spending $50,000 on his girlfriend during an extramarital relationship he had for six years of his marriage to Plaintiff. In a pretrial deposition he admitted spending $80,000.[6]

The state court then relied on Delaware law to determine the percentage of the marital estate which each spouse should receive, considering the factors enumerated in 13 Del. C. § 1513(a).[7] In order to achieve the division that it ordered, the court required Debtor to pay Plaintiff $52,308 within 90 days of June 9, 2000. If he failed to do so the residence was to be sold and the proceeds divided so that there would be a "50/50 division of the parties'

retirement savings and associated debt, and a 65/35 division of their remaining net marital estate." June 9, 2000, Letter Decision at 25–26. If the proceeds were insufficient, Debtor was required to pay the deficiency at settlement.[8] The court permitted Plaintiff to seek modification of the denial of alimony upon a substantial change of circumstances.[9] The record does not reflect whether or not the marital residence has been sold.

▮▮▮ One of the § 1513 factors considered by the state court in determining the division of marital property was whether Plaintiff should receive property in lieu of or in addition to alimony. The court found that an award of alimony was not appropriate because Plaintiff was not dependent on Debtor for her support. Under Delaware state law, alimony may be awarded only if the court finds (1) dependency on the part of the spouse seeking alimony; (2) that the spouse lacks sufficient property, including any property awarded in the divorce, to provide for "reasonable needs"; and (3) cannot support him or herself through "appropriate employment". June 9, 2000, Letter Decision at 23. However, the fact that under state law Plaintiff was not entitled to alimony does not mean that the award of property she received in the divorce does not actually function as support for purposes of § 523(a)(5).[10]

6. In the state court Plaintiff asserted that Debtor had dissipated $218,000 in marital assets but offered no proof of the amount.

7. According to the state court's opinion, those factors include the length of the marriage, any prior marriages, the spouses' age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs, whether the property awarded is in lieu of or in addition to alimony, the opportunity of each spouse to acquire capital assets and income in the future, the contribution or dissipation of each party with respect to, and the depreciation or appreciation of, marital property, the value of property set aside to each party, each party's economic circum-

stances at the time the property division was to become effective, whether property was acquired by gift, bequest, devise, or descent, the debts of each party, and the tax consequences of having liquidated their retirement accounts.

8. There were other provisions in the order that are not germane to the issue before us.

9. The court also ordered that Plaintiff could file a motion concerning her attorney's fees and costs. *See infra.*

10. In his answer to the Motion for Summary Judgment, Debtor asserts that there is a genuine issue of material fact but does not specify

### Section § 523(a)(5)—Nondischargeable Support

■ Section § 523(a)(5) provides that an obligation owed to a spouse or former spouse for support is nondischargeable if it is "actually in the nature of alimony, maintenance, or support". 11 U.S.C. § 523(a)(5). Even if the debt is labeled by the parties or the state court as alimony or support, unless it *functions* as such is dischargeable. 11 U.S.C. § 523(a)(5)(B). The converse is also true. That is, notwithstanding a finding by the state court that an award is not support, the bankruptcy court is required to apply "federal common law" in determining dischargeability under § 523(a)(5). *In re Stahl*, 261 B.R. 164, 168 (Bankr.W.D.Pa.2001) ("[d]etermining whether an obligation is in the nature of alimony, maintenance or support for purposes of § 523(a)(5) is a matter of federal law, not state law. We must 'look beyond the label' to ascertain its 'true nature' ") (citing *In re Gianakas*, 917 F.2d 759, 762 (3d Cir.), *aff'd* 917 F.2d 759 (3d Cir.1990)).

■ In *In re Gianakas*, 917 F.2d 759, 762 (3d Cir.1990), the Court of Appeals for the Third Circuit focused on the intent of the parties and used "three principal indicators" to determine that intent. These indicators encompass some of the factors used by the state court in this case. The first "indicator" is the language and substance of the parties' agreement or, as in this case, the court order, in the context of the circumstances. The state court was aware of the bankruptcy inasmuch as the parties got relief from the automatic stay to pursue property division before it. Indeed, that court noted that Debtor was attempting to get a credit for payments he made on allegedly joint debts while simultaneously listing them in his bankruptcy petition as debts he had not yet paid. The state court decision, however, was based entirely on state law and the court did not consider the function of the award for purposes of nondischargeability of debt in the context of the Bankruptcy Code.

The second "indicator" noted by the court in *Gianakas* is the parties' financial condition at the time of the award. The state court found for purposes of determining dependency under Delaware law that Plaintiff *could* be employed at a higher wage than she was earning at the time; however, the fact is that she was *not* fully employed. In addition, Plaintiff's financial condition was not as good as Debtor's even though she inherited property and had approximately $100,000 in assets. Debtor had assets of equivalent value. During the course of the 21–year marriage, she had worked full time about three years; *i.e.*, 1990–1993. She worked full time for two years after the divorce; *i.e.*, 1994–1995. After a period of unemployment she returned to work, part-time, in October 1997, at minimum wage. Her earning capacity also was not as great as Debtor's.

The third "indicator" is the function served by the obligation at the time of the order or agreement. The state court noted that it was precluded from awarding alimony because Plaintiff was not Debtor's economic dependent as defined by state law. For purposes of federal law, however, the state court's application of state law factors to determine economic dependency is not the standard to be used by the bankruptcy court in an action to determine dischargeability. Debtor admits that he had greater earning capacity and had dissipated at least $50,000 of marital assets in order to defeat Plaintiff's interests. All of this affected the value of assets available

---

what fact he considers to be in dispute and we can identify none. That the state court denied alimony based on a finding under state law that Plaintiff was not dependent is a conclusion of state law and does not create a material issue of fact.

for division between the parties and, in light of the parties' overall comparative financial condition, we find that the award functions as support. Plaintiff was working only part-time and it appears from the state court's opinion that the residence she was living in constituted the major portion of her assets.

In this case the parties were married for 21 years. For much of that time Plaintiff was a homemaker. At the time of the state court's Letter Decision of June 9, 2000, Plaintiff was fifty years old. Her health was poor and her earning potential was significantly less than Debtor's. Debtor was 49 years old, in good health, and admits that he has an earning capacity at least three times that of Plaintiff. Although Plaintiff inherited property worth approximately $100,000, the house in which she lives represents most or all of this value. This is not property that she can use to feed and clothe herself unless she sells it. In that case, she would be without shelter. The state court found that each party received marital assets of roughly equal value.[11] The state court found Plaintiff's less favorable earning capacity and economic circumstances to be insufficient for a finding of economic dependency on Debtor because she lives in the house she inherited on her mother's death without the burden of rent or mortgage payments, and her reasonable living expenses were less than her *imputed* earned and interest income.[12] The court specifically found that Debtor's "economic circumstances are better than [Plaintiff's] by virtue of the dis-

parity in their earning capacities. That disparity, however, is in part ameliorated by the fact that [Plaintiff] has received assets of at least $90,000 from her mother and lives rent and mortgage free in a residence previously owned by her." Letter Decision of June 9, 2000, at 21 (footnote omitted). The court also gave her thirty percent more of the parties' net marital estate because Debtor had greater earning capacity and had expended substantial marital assets on his girlfriend.

The state court's finding that Plaintiff was not dependent and so not entitled to alimony does not require a finding by this court that the award does not function as support for purposes of § 523(a)(5). In this Circuit we must look at the parties' circumstances at the time of the property settlement agreement or order to determine the actual nature of the award. *In re Gianakas*, 917 F.2d 759 (3d Cir.1990). We find that Debtor's $52,308 obligation to Plaintiff is actually in the nature of support and is nondischargeable under § 523(a)(5). Here, because of the parties' dissipation and/or disposition of assets before the state court's order, and the finding that Plaintiff was not dependent upon Debtor under Delaware marital dissolution statutes, the court ordered a lump sum to be paid by Debtor to Plaintiff. That is all Plaintiff will receive. Given her physical condition and earning capacity, Plaintiff needs the amount awarded by the court for living expenses. She has a residence but still must maintain it and pay taxes

---

11. Plaintiff had or would receive property valued at $120,000. Debtor had or would receive property valued at $90,000, plus perhaps $20,000 from his computer business, according to the state court.

There was also a dispute in state court as to whether Plaintiff received a certificate of deposit valued at almost $150,000 and whether she received the balance in a brokerage account, the value of which is not stated in the

state court's opinion. Because there is no evidence that these assets actually existed and neither party raised the issue in the Complaint or the motion for summary judgment, we do not consider these phantom assets in our analysis of whether Debtor's obligation to Plaintiff is in the nature of support.

12. The court used imputed income due to its finding that Plaintiff is underemployed.

associated with it. Her ability to earn is significantly less than Debtor's and she has been denied alimony, in essence, because her non-liquid assets provide her with a place to live rent or mortgage free. She is in poor health and is over 50 years of age, all of which affect her earning capacity. She has a high school education.[13]

*Plaintiff's Claim for Attorney's Fees and Costs*

In its Letter Decision of January 8, 2001, the state court found that requiring Plaintiff to pay her attorney's fees with her inheritance would defeat the division of marital property that it had ordered. In addition, Plaintiff was not to be faulted, the court said, for not settling ancillary matters in light of Debtor's higher earning capacity, his dissipation of marital assets and his admitted efforts to defraud Plaintiff. The court also found that the amount of fees requested by Plaintiff was unreasonable based on amounts customarily charged for similar services in the Wilmington, Delaware, area. The court then calculated reasonable attorney's fees and ordered Debtor to pay $3,396.26 of the total to Plaintiff.

■■■■ For purposes of finding a marital obligation nondischargeable, it is often sufficient that the attorney's fees and costs be incurred in connection with proceedings concerning support. *See, e.g., In re Edwards*, 261 B.R. 523, 526 (Bankr.M.D.Fla. 2001) (attorney's fees are nondischargeable support when "directly related to or inextricably intertwined with support obligations"). On the other hand, attorney's fees can be nondischargeable even when not incurred in connection with support proceedings if the award functions as support; i.e., when the award is based on need and ability to pay it can be nondischarge-

able even if not awarded as support in the state court. *See Cummings v. Cummings*, 244 F.3d 1263, 1266 (11th Cir.2001); *In re Finlayson*, 217 B.R. 666, 669 (Bankr. S.D.Fla.1998). *See also In re Finlayson*, 217 B.R. 666, 669 (Bankr.S.D.Fla.1998) (most of the issues litigated in the state court concerned property division but the state court awarded fees on the basis of need and ability to pay). In this case, Plaintiff's ability to pay the fees was less than Debtor's. Although Plaintiff had inherited property, it was not liquid. Debtor's actual income at the time of the award was less than her actual expenses on a monthly basis. Even using her imputed earnings of $23,000 per year, Plaintiff's ability to pay was and is less than Debtor's, who earned an average of $54,000 per year from employment and $15,000 per year from his computer business. The state court's order is actually in the nature of support for Plaintiff. We find this award to be in the nature of support and nondischargeable.

An appropriate order will be entered.

**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF JUDITH A. LANE PURSUANT TO 11 U.S.C. § 523(a)(5) AND DENYING SUMMARY JUDGMENT PURSUANT TO § 523(a)(4)**

**AND NOW,** this **26th** day of **September, 2001,** for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED,** and **DECREED** that Plaintiff's Motion for Summary Judgment is **GRANTED** and Judgment is entered in favor of Judith A. Lane (Plaintiff) and against Charles Randy Lane (Debtor/Defendant).

**It is further ORDERED** that Debtor/Defendant's obligations under the state

---

**13.** Debtor also has a high school education. However, he has been highly compensated in

his employment for years, and he is in good health.

ccurt's orders of June 9, 2000, and January 8, 2001, are **nondischargeable** on the basis of 11 U.S.C. § 523(a)(5). The Plaintiff **withdrew** the allegations under 11 U.S.C. § 523(a)(15).

**It is further ORDERED** that to the extent the Motion is based on § 523(a)(4) it is **DENIED** inasmuch as the Complaint contains no citation to or prayer for relief under § 523(a)(4).

**It is further ORDERED** that the Clerk shall close this adversary.