**In re Francesco P. FRONCILLO, a/k/a Frank P. Froncillo, Debtor.**

**Diane L. Gunn, Plaintiff,**

**v.**

**Frank Froncillo, Defendant.**

**Bankruptcy No. 02–11316.**
**Adversary Nos. 02–1080 to 02–1082.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 1, 2003.

James F. Geronimo, Meadville, PA, for Debtor.

Robert E. Draudt, Meadville, PA, for Diane L. Gunn.

## OPINION [1]

WARREN W. BENTZ, Bankruptcy Judge.

### Introduction

Francesco P. Froncillo a/k/a Frank P. Froncillo ("Frank" or "Debtor") filed a voluntary Petition under Chapter 7 of the Bankruptcy Code on June 12, 2002. Diane L. Gunn ("Diane"), Debtor's ex-spouse, filed the within Adversary Complaints to Determine Dischargeability of Debts, all of which arise from a Separation and Property Settlement Agreement ("Agreement" or "Settlement Agreement") executed by the parties on January 5, 1999. Diane asserts that the debts are nondischargeable under § 523(a)(5) and § 523(a)(15).[2] A trial was held on February 11, 2003 and the matter is ripe for decision.

### Facts

Frank and Diane married on May 12, 1979. They had two children. Frank

---

1. This Opinion constitutes this Court's findings of fact and conclusions of law.

2. All references to Code Sections are to Title 11 of the United States Code, unless otherwise indicated.

worked as a tool and die maker. Diane did not work outside of the home. Frank started a tool and die business in 1987 known as Spark Tool, Inc. He later started a second company, Lightning Plastics, Inc. Frank served as President, Chief Executive Officer and sole shareholder of both companies. The companies did well, at least for a time. In 1997, Spark Tool enjoyed earnings of $152,590. Lightning lost $20,000.

The marriage didn't do as well. Frank and Diane separated in 1997. At that time, their children were 14 and 16 years old. Diane remained in the marital residence with the children. Frank continued to pay the mortgage and all obligations which amounted to approximately $3,000 per month, plus a $600 per month child support payment.

The parties discussed the terms of the Settlement Agreement. The agreed goal was to structure the Agreement to provide enough money for Diane to have a reliable car and pay living expenses.

Frank and Diane executed the Settlement Agreement on January 5, 1999 and were eventually divorced in May, 1999, two days short of their 20th anniversary. The Agreement has several provisions related to property and finances designed to accomplish the agreed goal which provide in relevant part:

29. *EQUITABLE DISTRIBUTION OF PROPERTY*

(A) As part of the equitable distribution of the parties' marital property, Husband shall pay to wife the sum of Thirty–Five Thousand ($35,000.00) Dollars, plus interest at the rate of eight (8%) per annum, for a period of eight (8) years. Said payments shall be made in monthly installments of Five Hundred ($500.00) Dollars and shall be due and payable on the first day of each month.

Payments on this obligation shall commence at the end of the third year from the sale of the marital residence, when husband's obligation to pay alimony under the terms and provisions of this agreement have ceased or on January 1, 2001, whichever event shall occur first. . . .

The parties acknowledge and agree that these payments are not alimony but are part of the entire package of equitable division of property. Said payments shall not be deductible by Husband and shall not be includible in the income of Wife under Section 71(b)(1)(B) of the IRC.

(B) *TRANSFER OF REAL ESTATE*

The parties hereto agree that Wife shall have exclusive possession of the marital residence located at 4482 East Lake Rd., Jamestown, PA.

The parties agree that Husband shall be responsible for the payment of the outstanding obligations against said realty, including but not limited to: (a) mortgage; (b) secured lines of credit; (c) equity loans; (d) insurance; (e) realty taxes; and all utilities, with the exception of the telephone. . . .

The parties agree that the subject real estate is listed with Century 21 for a sale price of $205,000.00 and that the net proceeds therefrom shall be distributed to Wife. . . .

(C) The parties agree that Husband shall retain ownership of the business assets known as Spark Took (sic) Inc., and Lightning Plastics, Inc., and Husband shall be solely liable for any and all obligations arising out of said businesses, including, but not limited to: (a) leases (b) accounts payable (c) taxes and insurance, and shall hold Wife harmless and indemnify her from same.

(D) *PENSIONS, 401KS, AND OTHER RETIREMENT PLANS*

The parties agree that Husband shall retain ownership in his existing 401K....

(E) *TANGIBLE AND INTANGIBLE PERSONAL PROPERTY*

Husband and Wife do hereby acknowledge that they have previously divided their tangible personal property, including, but without limitation, jewelry, clothes, furniture, furnishings, rugs, carpets, household equipment and appliances, pictures, books, works of art and other personal property....

(F) *MOTOR VEHICLES*

With respect to the motor vehicles owned by one or both of the parties, they agree as follows:

a. The 1995 Ford Windstar shall be sold or traded within ten (10) days from the date hereof, to secure a new vehicle for Wife. Said new vehicle shall be selected by Wife and shall be titled solely and exclusively to Wife. The loan to secure said vehicle shall be held in the name of Wife and Guaranteed by Husband. Husband shall be solely responsible for the payment of said new vehicle loan for a sum not to exceed Five Hundred ($500.00) Dollars per month for a period of not more than four (4) years....

b. The 1964 Pontiac Bonneville shall become the sole and exclusive property of Wife....

c. The Ford Expedition shall become the sole and exclusive property of Husband....

d. The 1984 Honda Goldwing Motorcycle shall become the sole and exclusive property of Husband....

e. The 1990 Pontoon Boat shall become the sole and exclusive property of Husband....

33. *PAYMENT OF SPECIFIED OBLIGATIONS*

During the course of the marriage, Wife and Husband have incurred certain bills and obligations and have amassed a variety of debts, and it is hereby agreed, without the necessity of ascertaining for what purpose and to whose use each of the bills were incurred that Husband shall be solely responsible for all bills, including but not limited to, the amounts due and owing as of the date of separation, and Husband's post-separation expenditures on the:

a. Advanta Card

b. Discover

c. Citibank Visa

d. Mellon Bank Ready Credit

e. Montgomery Wards

f. People's Bank

g. The Credit Line at National City

Upon payment of the above enumerated accounts, they shall be closed or Wife's name shall be removed therefrom, and evidence thereof shall be submitted to Wife in writing upon demand....

34. *ALIMONY*

Upon the sale of the marital residence, and for a term of three (3) years thereafter, Husband shall pay to Wife the sum of One Thousand Five Hundred ($1,500.00) Dollars per month....

Following execution of the Settlement Agreement, Frank continued to pay the "outstanding obligations" against the residence until it was sold in May, 2000. Frank also paid $600 per month child support which was reduced to $300 per month when his eldest child graduated from high school in May, 2000. Diane received net proceeds of $40,000 from the sale of the residence. Pursuant to the Agreement, Diane bought a new car in January, 1999. Frank paid the monthly payment until March, 2002. When Frank stopped making payments, Diane assumed them in April, 2002. Frank did not make the pay-

ment on the various credit obligations specified in ¶ 33 of the Agreement.

Diane is a joint obligor on those obligations and has made payment on certain of those obligations.

Diane started receiving an alimony payment of $1,500 per month in April, 2000 when the residence was sold. Under the provision of the Agreement entitled "Alimony," Debtor is obligated to pay $1,500 per month for three years. The parties agree that Debtor has satisfied this obligation except for the payment of $500 per month through June, 2003 which the Debtor is presently paying monthly.[3] Under ¶ 29 of the Agreement, Diane is to receive $500 per month for 8 years after Debtor's $1,500 per month obligation is satisfied. Debtor seeks to discharge his obligations under ¶ 29.

After the separation, Diane obtained employment at Thiel College earning $150 per week. She remained employed at Thiel at the time the Agreement was executed. She later attended classes and became a Certified Nursing Assistant. She is presently employed as a nursing assistant earning gross income of $596 bi-weekly or about $1,300 per month. Diane remarried in November, 2002. Her present husband, Mr. Rudd, is a machinist and earns a gross income of $28,000 per year, or about $2,300 per month. Thus, the family gross income is $3,600 per month. Diane and Mr. Rudd purchased a $77,000 home. Each contributed $7,000 toward a downpayment. Their monthly mortgage payment is $672. Diane and Mr. Rudd have no unusual or extravagant expenses. Mr. Rudd contributes to a 401K plan and assists his son with college tuition. They are able to pay their monthly obligations.

The Debtor continued to operate Spark Tool and Lightning Plastics. The once robust tool and die industry became depressed. Earnings decreased in each year after 1997. In April, 2002, Debtor's companies ceased operation. Both the Debtor and his business interests filed Chapter 7 cases. Debtor is presently employed as an Applications Engineer in the Chicago area. His gross earnings are $50,000 per year. Debtor is also remarried and has a small child. Debtor's present wife receives unemployment compensation of $385 per week. She was formerly employed by a cellular telephone company and had earnings of $32,000 per year.

Debtor rents a home near Chicago for $1,275 per month. He continues to own his prior residence in Meadville, Pennsylvania, which is rented for $675 per month. Debtor has $16,000 equity in the rental property. Debtor has a gross income of $4,167 per month from employment and $675 in rental income. His wife presently receives $1,667 per month in unemployment benefits. The total gross income of the family is $6,509 per month ($4,167 + 1,667 + 675). Debtor has net income of $3,200 per month after deductions for taxes, medical insurance, and contributions to a 401K plan. Total family net income is $5,542 ($3,200 + 1,667 + 675). Debtor lists $4,422 per month in expenses. The expenses include a $500 per month alimony payment (scheduled to end in June, 2003) and a $590 mortgage payment on the Meadville, Pennsylvania property.

Debtor sold his Honda Goldwing motorcycle for $3,800 and used the proceeds to obtain an apartment for his daughter.[4] He has a boat which he plans on selling.

---

3. It is unclear how this obligation was reduced from $1,500 to $500 per month, but the parties agree that the obligation will be satisfied in June, 2003.

4. No mention was made at trial of Debtor's 1998 Harley Davidson motorcycle, listed on the bankruptcy schedules with a value of $10,000 for which Debtor signed a reaffirma-

## Positions of the Parties

Debtor seeks to discharge his obligations to Diane in this Chapter 7 case. Specifically, Debtor seeks to discharge his obligation to make the payments on Diane's car, the obligation to satisfy credit card obligations for which Diane is a codebtor, and the obligation to pay Diane $500 per month for 8 years. Debtor asserts that these obligations are not alimony or support and arise from an equitable distribution of property which is dischargeable.

Diane asserts that all of the Debtor's obligations are intended to provide for support and are therefore nondischargeable under § 523(a)(5). Diane further asserts that if any of the obligations are not in the nature of alimony or support, then the obligations are not dischargeable under § 523(a)(15).

## Discussion

### A.  Section 523(a)(5)

■ Section 523(a)(5) provides in relevant part that a bankruptcy discharge does not discharge an individual from any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree...but not to the extent that...(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support...." 11 U.S.C. § 523(a)(5). "A party who objects to the discharge of a particular debt has the burden of proving nondischargeability." *In re Gianakas,* 917 F.2d 759, 761 (3d Cir.1990).

■ "[T]he court must look beyond the label attached to an obligation by a settlement agreement to examine its true nature." *In re Gianakas,* 917 F.2d at 762. "[A] debt could be in the 'nature of support' under section 523(a)(5) even though it would not legally qualify as alimony or support under state law." *Id.* "[W]hether an obligation is in the nature of alimony, maintenance or support, as distinguished from a property settlement, depends on a finding as to the intent of the parties at the time of the settlement agreement." *Id.*

■ As stated by the Court of Appeals for the Third Circuit in *Gianakas:*

That intent can best be found by examining three principal indicators. The many other factors referred to by various courts are merely elements of these indicators.

First, the court must examine the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary. *See In re Yeates,* 807 F.2d [874] at 878 [(10th Cir.1986)]; *In re Miller,* 34 B.R. [289] at 292 [(Bankr.E.D.Pa.1983)]. However, it is likely that "neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose." *In re Wisniewski,* 109 B.R. 926, 929 (Bankr.E.D.Wis.1990). Therefore, the parties and the state courts may not have focused on whether a particular obligation was to serve as support or as a property settlement unrelated to support. *In re Alloway,* 37 B.R. 420, 425 (Bankr.E.D.Pa.1984). As the Pennsylvania Superior Court noted, even an obligation designated as property settlement may be related to support because

---

tion agreement that requires monthly payments of $386 on a balance of $9,313 to

Meadville Area Federal Credit Union.

state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution. *Buccino [v. Buccino]*, 397 Pa.Super. [241] at 250, 580 A.2d [13] at 18–19 [(1990)]. In fact, "property division often achieves the same goal as alimony, i.e., support." *Id.*

Because the language of the agreement alone may not provide a sufficiently conclusive answer as to the nature of an obligation, the second indicator to which we must look to assist in ascertaining the parties' intent is the parties' financial circumstances at the time of the settlement. The facts that one spouse had custody of minor children, was not employed, or was employed in a less remunerative position than the other spouse are aspects of the parties' financial circumstances at the time the obligation was fixed which shed light on the inquiry into the nature of the obligation as support. *See Shaver v. Shaver*, 736 F.2d 1314, 1317 (9th Cir.1984).

Third, the court should examine the function served by the obligation at the time of the divorce or settlement. An obligation that serves to maintain daily necessities such as food, housing and transportation is indicative of a debt intended to be in the nature of support. *See In re Yeates*, 807 F.2d at 879.

*In re Gianakas*, 917 F.2d at 762–63.

■ At the time of execution of the Settlement Agreement, Debtor was a successful entrepreneur operating business interests with earnings of $132,000 per year. Diane had not worked outside the home and had no training or marketable skills to enable her to find employment that would generate an income much beyond minimum wage. When the Agreement was executed, Diane was earning $150 per week.

The function of the Separation Agreement was to allow the Debtor to maintain his business interests and continue to earn a significant income and to use that income, in part, to provide enough funds for Diane to maintain a home, reliable transportation and pay living expenses.

Despite labels in the Agreement such as "Equitable Distribution of Property," "Motor Vehicles," "Payment of Specified Obligations," and "Alimony," various payments to be made by the Debtor, the entire Agreement was structured in a fashion to provide Diane ongoing and continuing support payments.

The Agreement provided for Debtor, with a far superior earning ability, to pay all outstanding obligations of the parties, provide reliable transportation, and to continue to pay the expenses associated with the marital residence until it was sold. Once it was sold, Diane could utilize the proceeds from the sale to make alternative living arrangements. Debtor would continue to pay $1,500 per month for three years while Diane obtained training and sought more gainful employment. Since Diane would never likely have earnings comparable to the Debtor's and since she would require continued assistance with support and maintenance, the Agreement was structured to provide that after three years of payments of $1,500 per month, Debtor would continue to assist with Diane's support by paying $500 per month for the following 8 years.

We conclude that all of the payments required under the Agreement, whether directly to Diane for car payments or to various creditors for jointly-owed obligations, are structured and designed as payments in the nature of alimony, maintenance of support for purposes of the Bankruptcy Code, despite the labels given the various obligations in the Agreement. Ac-

cordingly, the obligations are not dischargeable under § 523(a)(5).

## B. Section 523(a)(15)

Having concluded that the obligations at issue are nondischargeable under § 523(a)(5), a discussion of dischargeability under § 523(a)(15) is unnecessary. *In re Brown*, 288 B.R. 707, 714–15 (Bankr. W.D.Pa.2003).

Under § 523(a)(15), a property settlement "incurred by the debtor...in connection with a separation agreement" is nondischargeable unless "the debtor does not have the ability to pay such debt," or "discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a...former spouse...." 11 U.S.C. § 523(a)(15)(A)-(B).

Were it necessary to consider § 523(a)(15), we would conclude that neither of the exceptions, set forth at § 523(a)(15)(A) and (B), to the exception to discharge found at § 523(a)(15) applies here.

The Debtor's present net household monthly income is $5,542. His expenses, including an alimony payment of $500 per month scheduled to end in June, 2003, are $4,422. His wife's unemployment may end soon, but she is employable and the monthly expenses include payment of her car lease and credit card obligations. The Debtor has the ability to satisfy his obligations under the Settlement Agreement.

We also find that the detriment Diane would suffer would outweigh the benefit Debtor would enjoy if the obligation were discharged.

Debtor's income and earning ability are multiples of Diane's. Both of their new spouses are employable and can contribute to household income. While payment of his obligations under the Settlement Agreement will be a strain, that strain will be far less than the detriment Diane would suffer if Debtor were discharged.

## Conclusion

Debtor's obligations which arise under the Settlement Agreement to Diane and for Diane's benefit are not dischargeable in this bankruptcy case. An appropriate Order will be entered.

## ORDER

This 1 day of August, 2003, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. The obligation of Francesco P. Froncillo a/k/a Frank Froncillo ("Debtor") which arises under § 29(F) of the Separation and Property Settlement Agreement dated January 5, 1999 ("Agreement") for Motor Vehicle loan payments is nondischargeable and shall not be discharged in this bankruptcy case.

2. The obligation of Debtor which arises under ¶ 33 of the Agreement to pay certain specified obligations is nondischargeable and shall not be discharged in this bankruptcy case.

3. The obligation of Debtor which arises under ¶ 29(A) of the Agreement to pay $35,000 plus interest at the rate of 8% per annum to Diane L. Froncillo, now Diane L. Gunn, is nondischargeable and shall not be discharged in this bankruptcy case.