In re Raymond E. **MILLS**, Debtor.

**Bonita L. Brown, Plaintiff,**

v.

**Raymond E. Mills, Defendant.**

**Bankruptcy No. 03–26564 BM.**
**Adversary No. 03–2604 BM.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 25, 2004.

Walter K. Swartzkopf, Foreman & Swartzkopf, Atloona, PA, for Plaintiff.

Theresa C. Homady, Homady & Wheeler, Duncansville, PA, for Defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Plaintiff Bonita Brown, the former spouse of debtor Raymond Mills, seeks a determination that a debt owed to her by debtor arising under paragraph 5 of their post-nuptial agreement is excepted from discharge by § 523(a)(5) of the Bankruptcy Code. In the event this debt is not excepted from discharge by this provision, plaintiff alternatively seeks a determination that the debts arising under paragraphs 4 and 5 of the post-nuptial agreement are excepted from discharge by § 523(a)(15) of the Bankruptcy Code.

Debtor denies that the debts in question fall within the purview of these provisions of the Bankruptcy Code and insists that they are dischargeable.

We conclude for reasons set forth in this memorandum opinion that the debt arising under paragraph 5 of the post-nuptial agreement is excepted from discharge by § 523(a)(5). We need not in light of this determination address plaintiff's alternative contention that the debts arising under paragraphs 4 and 5 of the post-nuptial agreement are excepted from discharge by § 523(a)(15).

## — FACTS —

Plaintiff and debtor married on November 30, 1992, and separated on May 10.1999. Plaintiff and debtor are fifty-three and fifty-seven years old, respectively. No children were born as a result of their marriage. Plaintiff has a son by a previous marriage.

Plaintiff commenced a divorce proceeding against debtor in The Court of Common Pleas of Blair County, Pennsylvania, in the year 2000. The precise date on which it commenced is not indicated in the record.

Debtor and plaintiff executed a document entitled "Post-Nuptial Agreement" on February 14, 2000. The document was drafted by plaintiff's counsel in the divorce proceeding. Debtor elected for reasons of his own to forego representation by counsel in the proceeding.

Paragraphs 4 and 5 of the agreement provided as follows:

4. *Future Sale of Business Property.* In the event that Husband sells any part of the business interest that he presently owns or if he becomes disabled, Wife shall receive an amount equal to fifty percent (50%) of the net amount Husband receives for that interest, or 25.5 % of the interest that the Husband owns or conveys, whichever amount is more.

5. *Division of Marital Estate.* Commencing on the date of execution of this agreement and for the period of the lifetime of the Wife, Husband shall pay to Wife as her Share of the marital estate the sum of Four Hundred and Fifty Dollars ($450) per month payable on the first day of each month.

In February of 2000 debtor was the sole principal of Environmental & Tank Services, Inc., which installed and removed underground storage tanks.

After their separation on May 10, 1999, but prior to February 14, 2000, plaintiff received from debtor support payments in the amount of $800 per month to help plaintiff meet her living expenses. Debtor made such payments because, in his own words, the business was "doing well" and he could afford to do so. Debtor expected that the business would continue "doing well" for the foreseeable future and that he could find employment elsewhere if it did not.

His expectation was dashed when the business of removing and installing underground tanks suddenly dried up. The business ceased operating by the end of the year 2000. Although he thereafter created an enterprise for erecting pre-fabricated steel buildings, he was not successful in finding customers and remained unemployed for a considerable period of time.

Plaintiff was not employable on account of her health. She had—and still has—pulmonary emphysema for which she takes several medications and in February of 2000 was receiving disability payments in the amount of $600 per month. The monthly payments in the amount of $800 she received from debtor were in addition to and supplemented her disability payments.

During the negotiations leading up to the post-nuptial agreement, debtor offered to continue paying plaintiff $800 per month. By agreement of plaintiff and debtor, the amount was reduced to $450 per month because plaintiff was informed that she would no longer qualify for medical assistance if she continued receiving $800 per month from debtor. Plaintiff's disability payments subsequently ceased altogether when she married her present husband after she and debtor were divorced.

The court with jurisdiction over the divorce proceeding issued a divorce decree on June 2, 2000. A second order incorporating *nunc pro tunc* the provisions of the post-nuptial agreement as part of the divorcee decree was issued on November 6, 2000.

Debtor stopped making the payments to plaintiff required by paragraph 5 of the post-nuptial agreement after making only a handful of payments. The exact number of payments he made is not clear from the record. He subsequently was incarcerated for a period of time for failing to make the payments and was released from jail only after he paid the sum of $5,400 to plaintiff and the additional sum of $2,400 to plaintiff's divorce counsel.

Debtor filed a voluntary chapter 7 petition on May 27, 2003. He unquestionably seeks to have the debt arising under paragraph 5 of the post-nuptial agreement discharged. Included among the liabilities listed on his schedules was a debt owed to plaintiff in an unknown amount arising out of paragraph 5 pus arrearages, "if any", in the amount of $4,800.

Plaintiff commenced the above adversary action against debtor on September 12, 2003. She seeks a determination that the obligation provided for in paragraph 5 of the post-nuptial agreement was intended to provide support for her and consequently is excepted from discharge by § 523(a)(5) of the Bankruptcy Code. In the event the debt provided for in paragraph 5 does not fall within the purview of § 523(a)(5), plaintiff alternatively seeks a determination that the debts arising out of paragraphs 4 and 5 of the agreement are excepted from discharge by § 523(a)(15).[1]

---

1. It is perhaps worth noting that debtor and her present husband filed a joint voluntary chapter 7 petition in this court on December 22, 2003. Included as an asset listed on their

Debtor denies In his answer to the complaint that these obligations fall within the purview of § 523(a)(5) and/or (a)(15).

This matter was tried on July 30, 2004, and is now ready for decision.

## — DISCUSSION —

Section 523(a)(5) of the Bankruptcy Code provides in part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt — ....
>
>> (5) to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ..., in connection with a separation agreement, divorce decree, or other order of a court of record ....

11 U.S.C. § 523(a)(5).

To give a debtor in bankruptcy a reasonable opportunity for a "fresh start", the various exceptions to discharge enumerated at § 523(a) of the Bankruptcy Code are strictly construed in favor of the debtor and against the objecting creditor. This practice is tempered somewhat, however, if the debt at issue arose in the course of a divorce proceeding or as a result of an agreement between the spouses. Congress intended when it enacted § 523(a)(5) to protect spouses, former spouses and dependent children where their support by a debtor in bankruptcy is at issue. *Matter of Crosswhite,* 148 F.3d 879, 881–82 (7th Cir.1998). The policy underlying § 523(a)(5) favors preservation of familial obligations over a debtor's "fresh start". *In re Kemp,* 232 F.3d 652, 653 (8th Cir.2000).

Because plaintiff objects to the dischargeability of the obligation owed to

her by debtor, she has the burden of proving that it is excepted from discharge by § 523(a)(5). *Gianakas v. Gianakas (In re Gianakas),* 917 F.2d 759, 761 (3d Cir.1990). She must do so by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286–88, 111 S.Ct. 654, 659–61, 112 L.Ed.2d 755 (1991).

Federal law, not state law, governs when determining whether an obligation is in the nature of alimony, maintenance or support of a former spouse for purposes of § 523(a)(5). *Gianakas,* 917 F.2d at 762. An obligation may not so qualify under state law but may so qualify for bankruptcy purposes.

How an obligation is characterized in a court order or an agreement between spouses also is not dispositive when ascertaining its "true nature" for purposes of § 523(a)(5). We must "look beyond the label" attached to an obligation by the court or the parties when making this determination. *Id.*

Our inquiry is limited to considering the facts *as they existed at the time of the obligation. Id.* Subsequent events— *e.g.,* a later change in the respective financial situations of the spouses—are not relevant in this regard.

Whether an obligation is in the nature of alimony, maintenance or support depends on the intention extant *when the obligation arose. Id.* If the relevant document is an agreement of the parties which was incorporated into a divorce decree, we must ascertain the intention of the parties when it was reached.

---

schedules were the monthly payments in the amount of $450 debtor had agreed to make to plaintiff. The total declared value of this asset was $20,000. Plaintiff took an exemption in this amount in the payments to which there was no objection. Plaintiff and her present husband received discharges on May 12, 2004.

We are to consider three principal "factors" when undertaking to determine this intention.

We first should consider the language and substance of the relevant document in the context of surrounding circumstances, taking extrinsic evidence into account if necessary. Even an obligation expressly characterized as equitable distribution may be related to alimony, maintenance or support because courts often will adjust the latter depending on the nature and amount of marital assets available for distribution. *Id.*

Next we should consider the respective financial situations of the spouses at the time of the court order or agreement. Relevant considerations may include whether one of the spouses has custody of any minor children, is unemployed, or has a job that pays considerably than the other spouse is paid. *Id.*, 917 F.2d at 763.

Finally, we should consider the function of the obligation at the time it arose. An obligation that served to provide a spouse with the necessities of life—e.g., food shelter, clothing or transportation—most likely was intended to provide maintenance or support. *Id.*

Applying these legal precepts to the evidence presented at trial, we conclude that the obligation arising as a result of paragraph 5 of the post-nuptial agreement, which was incorporated into the final divorce decree, falls within the scope of § 523(a)(5) and therefore is excepted from discharge.

The heading of paragraph 5 of the post-nuptial agreement speaks of "division of marital property" while the provision itself characterizes the payment of $450 per month to plaintiff as her "share of the marital estate". These characterizations are not dispositive in this instance. *Gianakas* makes clear that we must "look beyond the label attached to an obligation by a settlement agreement to examine its true nature". *Id.*, 917 F.2d at 762.

The post-nuptial agreement, which was drafted by counsel to plaintiff in the divorce proceeding, was executed more than three years before debtor filed his voluntary chapter 7 petition. Counsel had no reason to suspect in February of 2000 that debtor subsequently would go into bankruptcy and would seek to have his obligation to plaintiff thereby discharged. Counsel to plaintiff, in other words, had no reason to take pains to characterize the obligation arising under paragraph 5 of the post-nuptial agreement so as to make it clear beyond any doubt that the obligation was intended to provide support for plaintiff.

Moreover, the respective financial situations of plaintiff and debtor when the post-nuptial agreement was arrived at leads us to conclude that the parties intended at that time for the obligation to provide support for plaintiff.

In February of 2000 plaintiff was a stay-at-home housewife with a serious health problem. She had—and still has—pulmonary emphysema and was not capable of gainful employment outside the home. Her only steady source of income in February of 2000 consisted of disability payments in the amount of $600 per month. Plaintiff was not able to support herself on this meager amount.

Debtor, by contrast was in the business of removing and installing underground storage tanks. By debtor's own account he was "doing well" in February of 2000. His business unfortunately "tanked" at the end of the year 2000 and closed for good. This unfortunate subsequent turn of events, however, is not relevant to determining whether, in February of 2000, the obligation set forth in paragraph 5 of the

post-nuptial agreement was intended to provide support for plaintiff.

The conclusion that this obligation was intended by the parties to provide support for plaintiff is reinforced by the function the obligation served. Aside from the monthly disability payments in the amount of $600, plaintiff had no source of income with which to support herself. Without the additional income provided for in paragraph 5 of the post-nuptial agreement, it is doubtful that plaintiff would have been able in February of 2000 to keep a roof over her head and to put food on the table.

Perhaps the most compelling indication that the obligation in question was intended to provide support for plaintiff can be found in the explanation for how the amount of the payment was determined.

Prior to February of 2000, debtor paid the sum of $800 per month to plaintiff while their divorce was pending. This was in addition to the monthly disability payments plaintiff was then receiving. These interim supplementary payments from debtor unquestionably were intended to enable plaintiff to support herself.

If the interim payments from debtor to plaintiff prior to February of 2000 were intended to provide support for plaintiff, it is reasonable to infer that the monthly payments to plaintiff provided for in paragraph 5 of the post-nuptial agreement were intended for the same purpose. Nothing in the record indicates that the payments provided for by paragraph 5 of the post-nuptial agreement were intended to serve a different purpose than the payments made prior to February of 2000.

The only significant difference in the monthly payments from debtor to plaintiff was the amount due. As we have seen, the reduction in the amount from $800 to $450 per month was due to an intervening consideration and was not the result of a change in the intention of the parties in February of 2000.

We conclude in light of the foregoing considerations that the debt arising out of paragraph 5 of the post-nuptial agreement falls within the scope of § 523(a)(5) of the Bankruptcy Code and therefore is excepted from discharge.

In light of this conclusion we need not address plaintiff's alternative assertion that the debts arising under paragraphs 4 and 5 of the post-nuptial agreement are excepted from discharge by § 523(a)(15) of the Bankruptcy Code.[2] Plaintiff requested such relief only if the debt arising under paragraph 5 does not fall within the scope of § 523(a)(5). We have determined that this latter debt falls within the scope of § 523(a)(5).

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** at Pittsburgh this **25th** day of **August,** 2004, in light of the foregoing memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that judgment in this adversary action be and hereby is entered in favor of plaintiff Bonita L. Brown and against debtor/defendant Raymond Mills. The debt owed to plaintiff by debtor is **EXCEPTED FROM DISCHARGE.**

It is **SO ORDERED.**

---

**2.** It should be noted that no evidence was presented concerning the amount of this obligation.